Respondents' motion to strike bill of exceptions allowed
September 15, 1953, argued April 27, 1955,
reversed June 29, 1955

## CAMPBELL *v.* CITY OF PORTLAND

260 P. 2d 1094
285 P. 2d 529

*Green, Richardson & Green,* of Portland, for the motion.

*Alexander G. Brown,* City Attorney, and *David R. Williams* and *E. Wayne Cordes,* Deputy City Attorneys, all of Portland, contra.

PER CURIAM.

The plaintiff, Mabel Campbell, moves this court for an order striking from the files defendant's purported bill of exceptions.

The last day for tendering a bill of exceptions in this case was June 15, 1953. There is a factual dispute between the parties as to the actual date upon which tender was made. Defendant maintains that the proposed bill of exceptions was tendered to the clerk of the court on June 15, 1953. The clerk's filing mark indicates it was filed on June 16, 1953. However, we find it unnecessary to pass upon and decide this question of fact.

It is admitted that a copy of the proposed bill of exceptions was not served upon plaintiff, the adverse party, prior to its presentation to the clerk of the court. In fact, no such service was made until June 16, 1953, and after tender to the clerk and delivery to the trial judge.

The rules of the circuit court for the fourth judicial district, Multnomah county, effective June 1, 1952, provide:

> "Rule 75. Any party to a civil or criminal action may within sixty days after the entry of final judgment tender a bill of exceptions.
>
> "Rule 76. A copy of the proposed bill of exceptions shall be served on the adverse party or his attorney and thereafter presented to the clerk of the Court, who shall endorse thereon the date of its presentation to him, and the attorney shall thereafter deliver the same to the trial judge."

■ Rule 75 is a restatement of a portion of § 5-703, OCLA, relating to the tendering of a bill of exceptions. The requirements of § 5-703, OCLA, as to the time element, are strictly construed.

■■ Rule 76 requires service of the proposed bill of exceptions upon the adverse party before it is tendered to the clerk of the court and delivered to the trial judge. This rule violates no constitutional or statutory right of a party. It is binding upon the court and upon litigants.

Upon the authority of *Hart v. State Industrial Accident Commission,* 148 Or 692, 701, 38 P2d 698, the motion of plaintiff is sustained. The bill of exceptions will be stricken.

## ON THE MERITS

*E. Wayne Cordes,* Portland, argued the cause for appellant.

*Burl L. Green,* Portland, argued the cause for respondent.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, LATOURETTE and PERRY, Justices.

LATOURETTE, J.

The city of Portland appeals from a judgment awarding damages to plaintiff who drove her car off the pavement at the end of a city street onto the railroad tracks of a railway company.

Plaintiff was proceeding northerly on 28th avenue. Industrial street runs in a general easterly and westerly direction and the two streets meet at right angles forming a T intersection. Northerly of Industrial street at the intersection there is a strip of pavement several feet in length wholly on property of the railroad company. It was at the end of this strip that plaintiff dropped off onto the railroad track and on property belonging to the railway company.

The theory of plaintiff's complaint is that the city was negligent in its failure to erect a warning sign,

a stop or caution light or a barricade at the intersection warning those traversing 28th avenue of the dangerous condition existing beyond the street which created an unreasonable hazard.

■ The law is settled that a city may be liable for damages where a party traveling the street is injured by a defective condition of the street itself. *Blue v. City of Union,* 159 Or 5, 75 P2d 977. This case presents a novel question in that the accident actually happened outside of the city street. Since the precise question has never been before this court we must look to the body of the law for guidance.

■ Cases are legion holding that a city may be liable for damages if a street is so near a dangerous condition as to render it unsafe for those traversing the street to proceed even though the dangerous place is outside the confines of the city street.

■ A clear statement of this well-settled rule is found in 25 Am Jur 814, Highways, § 531, as follows:

> "It is well settled that it is the duty of a municipal or quasi-municipal corporation to erect railings or barriers along the highway at places where they are necessary to make the way safe and convenient for travelers in the use of ordinary care, and that such corporation is liable for injuries to travelers resulting from a breach of its duty in this regard. This is true even though the danger arises from structures or excavations outside the highway and on the land of adjoining owners, when such structures or excavations are in the general direction or course of travel upon the highway. * * *"

See Annotation, 86 ALR 1389, and ALR Blue Book of Supp. Dec.; 63 CJS 160, Municipal Corporations, § 822; 19 McQuillin, Municipal Corporations, 3d ed, §§ 54.69 and 54.90; 2 Restatement, Torts, § 368, comment b; 2 Elliott, Roads and Streets, 4th ed, § 790.

The decision in this case rests upon the applicability of § 1-110 of the Portland city charter, the pertinent part of which reads as follows:

"No recourse shall be had against the city for damage or loss to person or property suffered or sustained by reason of the defective condition of any sidewalk, street, avenue, lane, alley, court, or place * * *; nor shall there be any recourse against the city for damage to person or property suffered or sustained by reason of accident on sidewalk, street, avenue, lane, alley, court, or place, or by falling from any embankment thereon or into any excavation therein; * * *"

We held that the above section was valid in *Noonan v. City of Portland,* 161 Or 213, 88 P2d 808.

Plaintiff argues that such provision has no bearing on the question because the accident happened without the limits of the city street on private property and that the charter provision refers only to physical defects in the city street itself. She asserts her right of action at common law and that any statutory attempt to impair this right must be strictly construed, citing *Morton v. Wessinger,* 58 Or 80, 85, 113 P 7, from which we quote:

"* * * All statutes which encroach on the person or property rights of the individual, are to be construed strictly, and in the absence of express words or necessary intendment or implication, it will be presumed that a statute is not intended to interfere with or prejudice a private right or title. 26 Am. & Eng. Enc. Law (2 ed.) 661."

and 19 McQuillin, Municipal Corporations, 3d ed, § 54.07, as follows:

"And it is well settled that the legislature has power, in the absence of constitutional restriction, to limit the liability of municipalities as to defective highways, or even wholly to exempt them from any liabilities for injuries resulting from defective

streets. But a statute relating to municipal liability for defective streets will not be extended by implication and will not be construed to have changed or removed the common law liability unless clearly so stated and apparently and evidently so intended."

If by the use of the phrase "common law" plaintiff means the common law of England embraced by this and other commonwealths, her premise is fallacious because there was no right of action at common law against the government for an action of this nature. This matter was fully discussed in *Noonan v. City of Portland*, supra. If she means the common law of this country as evidenced by the opinions and judgments of the sages of the law (See 8 Words & Phrases, Perm ed, pp 107 et seq) we must look to the cases to determine the theory of liability of cities in a case of this character. In 19 McQuillan, supra, § 54.69, we read:

"* * * In some cases it does not clearly appear whether the hole, opening or excavation was at the side of but within the street limits, or whether it was entirely outside the street limits, but this is immaterial unless the dangerous condition is far away from the street. The duty, if the excavation renders the street dangerous, is the same as if the excavation were in the street itself. * * *"

In *Davis v. Hill*, 41 NH 329, cited in *Prather v. City of Spokane*, 29 Wash 549, 70 P 55, the court said:

"It seems entirely clear, upon the authorities, that the want of a sufficient railing, barrier, and protection to prevent travelers passing upon a highway from running into some dangerous excavation or pond, or against a wall, stones, or other dangerous obstruction without the limits of the road, but in the general direction of the travel thereon, may properly be alleged as a defect in the highway itself."

In *City of San Antonio v. Porter,* 24 Tex Civ App 444, 59 SW 922, 924, the court states:

"* * * if there is a dangerous place, such as a declivity or excavation, so close to the street, or the traveled portion thereof, as to render it unsafe for travel in the absence of a railing or barrier, the wanting of such railing or barrier constitutes a defect in the highway itself, for injuries from which the municipality is liable. * * *"

To the same effect are *Rippe v. City of Los Angeles,* 50 Cal App2d 189, 123 P2d 47; *Palmer v. Inhabitants of Andover,* 56 Mass (7 Gray) 600, 606; *Trimble v. City of New York,* 275 App Div 169, 88 NYS2d 324; *Wiggin v. City of St. Louis,* 135 Mo 558, 37 SW 528; *Bixby v. City of Sioux City,* 184 Ia 89, 164 NW 641; *Township of Plymouth v. Graver,* 125 Pa St 24, 17 A 249.

Plaintiff strongly urges that she is not relying on a defect in the street itself. It is true that the complaint does not allege that the street was defective. It does aver, however, that by reason of the attendant circumstances a situation dangerous and hazardous to automobile drivers was created, and by reason thereof the city is liable because of its failure to place warning signs at the intersection. In other words, defendant is charged with nonfeasance in failing to erect signs to warn of the attendant danger and hazard.

■ It seems clear to us that plaintiff's cause of action is predicated upon a defective condition of the street. If this were not so plaintiff's cause of action would fail. In *Erickson v. Meier & Frank Co.,* 142 Or 76, 85, 18 P2d 207, we read: "A defect implies a deficiency, a lack or want." In *Hayden v. Inhabitants of Attleborough,* 73 Mass 338, 343, we read:

"* * * And we have no doubt that want of a railing necessary to the security of travellers is a

'deficiency' in a way, within the meaning of this § 26, as it has been held to be a 'defect' within the meaning of § 22 of the same chapter, which rendered towns answerable for damages sustained by reason of any defect in a way. Palmer v. Andover, 2 Cush. 600.''

From the foregoing it is clear that the absence of barricades or warning signs along the street in the instant case was a defect in the street itself. This being so, it necessarily follows that the city is absolved from liability by the express language of the charter exemption.

In view of our conclusion, it will be unnecessary to consider the cases cited by plaintiff on this phase of the case other than the case of *Hise v. City of North Bend,* 138 Or 150, 6 P2d 30, for the reason that they are more or less cited to support the doctrine that charter provisions of immunity are to be strictly construed.

In *Hise v. City of North Bend,* supra, we have a situation where the plaintiff was traveling over a plank wharf extending some 389 feet from the end of a city street and plunged into the bay. A charter provision in all essential respects identical to that of the Portland charter was invoked by the city to absolve it from liability. The city claimed that the provision of the charter extended to the wharf although outside of the limits of the street. We held against the city, stating:

"* * * When the city of North Bend provided itself with streets, avenues, boulevards, etc., it exercised that element of its dual functions which is governmental or political, but when it began the operation of a municipal wharf for the commercial advantage of the city and its adjacent territory, and levied wharfage charges, it was exercising a purely corporate, proprietary or private function. * * *''

Since in the instant case the city of Portland in relation to its streets was exercising a governmental or political rather than a corporate function, the Hise case lends no support to plaintiff.

We are of the opinion that § 1.110 of the Portland city charter absolves the city from liability in the present case.

Reversed.