Motion to dismiss denied June 19, 1957, argued September 17, 1959, reargued November 18, affirmed November 25, 1959

# MILLER *v.* SAFEWAY STORES

312 P. 2d 577
346 P. 2d 647

Hicks, Davis, Tongue & Dale, and Sol Siegel, Portland, for the motion.

James Arthur Powers and Earle P. Skow, Portland, contra.

ROSSMAN, J.

The plaintiff-respondent has filed a motion in which she seeks an order dismissing the appeal and, if that relief is not granted, an order striking the bill of exceptions.

The judgment which the defendant-appellant seeks to challenge was entered by the Circuit Court for Multnomah County November 21, 1956. The notice of and undertaking on appeal were filed January 14, 1957.

The bill of exceptions was tendered April 2, and was settled by the approving signature of the trial judge April 17. The short transcript was filed April 18, 1957.

The motion under consideration seeks an order for the dismissal of the appeal

"on the grounds and for the reasons that said appellant failed to file the transcript on appeal within thirty (30) days after January 19, 1957, the day upon which said defendant-appellant's appeal was perfected, or within such further time as might have been granted by a valid order of the Court based upon application duly made and served within said thirty-day period, or within any valid extension that might have been granted, all as required by ORS 19.070."

The alternative motion to strike the bill of exceptions was based upon the ground that the circuit court had no jurisdiction to settle the bill of exceptions because it was not tendered

"within sixty (60) days after entry of the judgment herein or within such further time as might have been granted by valid order of the Court based upon application made during said period of sixty days or within any valid extension that might have been granted, as required by ORS 19.100."

ORS 19.070 provides that the transcript on appeal, which the rules of this court term the short transcript (Rules 2, 3, 4, 5 and 6 of the Supreme Court), must be filed with the clerk within thirty days after the appeal is perfected. Subdivision (3) of that section makes provision whereby counsel may secure an enlargement of the available time. It says:

"(3) The trial court or the judge thereof, or the Supreme Court or a justice thereof, may, upon such terms as may be just, by order, enlarge the

time for filing the transcript, but the application for such order shall be served and filed within the time allowed to file transcripts, and the order shall be made within 10 days thereafter. Nothing contained in this section shall prevent the trial court or a justice of the Supreme Court from permitting an extension of time for the filing of a transcript in any appeal at any time in accordance with and upon written stipulation * * *."

ORS 19.100 governs the bill of exceptions. Its opening words grant sixty days to the appellant for tendering the bill and then authorize the court in the following provision to extend the time

"within such further time as may be granted by order of the court if application is made during the said period of 60 days or within any extension that may be granted."

Notice should be taken of the disparity between the two code provisions just quoted. *State v. Leonard,* 164 Or 579, 94 P2d 1113, 102 P2d 197, commented upon the differences.

From the foregoing we see that the motion to dismiss the appeal is based upon a contention that the transcript on appeal (short transcript) was filed tardily. The motion to strike the bill of exceptions submits the contention that the bill was not tendered within the time allowed by law.

ORS 19.070, as we have seen, requires that the transcript on appeal (short transcript) must be filed with the clerk of the Supreme Court "within 30 days after the appeal is perfected" or within the enlarged time. ORS 19.100 requires the bill of exceptions to be tendered "within 60 days after the entry of the judgment, or within such further time as may be granted by order of the court."

The issues in this case do not concern the original

time but the enlarged time, or, more particularly, the means which the appellant employed in securing orders for the enlargement of the time. In securing the extensions, it did not use written motions which had been served on the respondent's counsel, but secured the extensions through oral ex parte applications.

The challenged judgment was entered November 21, 1956, and the appeal was perfected January 19, 1957. The trial judge made the following four orders, each of which enlarged, or at least attempted to enlarge, the time for (a) presenting the bill of exception and (b) filing the transcript on appeal: (1) January 4, 1957, the time for presenting the bill of exceptions was extended to and including March 1, and the time for filing the transcript to April 1; (2) February 15, the time for presenting the bill of exceptions was extended to and including April 1, and for filing the transcript to April 1; (3) March 22, the time for tendering and filing the bill of exceptions was extended to April 15, and for filing the transcript to April 15; (4) April 10, the time for settling the bill of exceptions to April 20, and for filing the transcript to April 25.

■ The plaintiff-respondent, in challenging the validity of the above orders which undertook to enlarge the time for presenting the bill of exceptions and filing the transcript on appeal, argues that

"all of said four purported orders were and are completely unauthorized and void for the reason that all of said purported orders were entered solely upon the basis of oral ex parte motions by one of the attorneys for the defendant-appellant, and that no motions for said orders were served upon any of the attorneys for plaintiff-respondent nor set for hearing after notice served on said attorneys, all as required by Rules 35 and 19 of the

Rules of the Circuit Court of the State of Oregon for the County of Multnomah and by ORS 16.730 and 19.070 and 19.100 * * *."

Continuing, the plaintiff-respondent says:

"The issues presented at this time are whether

"(1) The orders extending the time for filing the short transcript are void when based upon oral ex parte applications and, if so, whether the appeal should thereby be dismissed; and

"(2) Whether orders extending the time to tender the bill of exceptions are void when based upon oral ex parte applications thus requiring that the bill of exceptions be stricken."

ORS 16.730 says:

"When a notice of a motion is necessary, it shall be served 10 days before the time appointed for the hearing; but the court or judge thereof may prescribe, by order indorsed upon the notice, a shorter time. Notice of a motion is not necessary except when required by statute, or when directed by the court or judge in pursuance thereof."

We do not believe that 16.730 requires that an application for an enlargement of time must be served on adverse counsel and will mention it no further.

■ We will now consider the manner in which an extension of time may be secured for filing a transcript on appeal. ORS 19.070(3), in providing that the time for filing a transcript on appeal may be enlarged, requires that "the application for such an order shall be served and filed." Thus, it is clear that when a would-be appellant applies for an extension of time to file the transcript, he must do so by written application. The same section demands that the would-be appellant must serve the application. An oral ex parte application seeking an extension of time to file a transcript on appeal is "unauthorized and void." *Moberg v.*

*Baker,* 217 Or 551, 307 P2d 759. Therefore, applications for enlargement of the time to file a transcript on appeal must be in writing and must be served on opposing counsel.

We come now to the bill of exceptions. ORS 19.100, previously quoted, authorizes the grant of extensions of time for the presentation of a bill of exceptions, but does not prescribe the course which the appellant must pursue to gain an extension beyond employing the word "application." *State ex rel. Leonard,* 164 Or 579, 94 P2d 1113, 102 P2d 197, after referring to the section of our laws just cited, says it

"does not provide that an application for extension of time within which to file a bill of exceptions must be made in writing".

It added:

"our attention has not been directed to any other statute or any rule of the Circuit Court for Tillamook County requiring such an application to be in writing."

From that holding we see that our statutory rules of procedure do not state that an application for an extension of the time in which the appellant may file the bill of exceptions must be in writing and must be served on the respondent. The decision, however, intimated that a court-adopted rule might impose the duty.

■ The respondent, however, believes that rules adopted by the Circuit Court for Multnomah County require applications for extensions of time to file bills of exceptions to be in writing and to be served on opposing counsel. Courts cannot adopt rules of practice which violate constitutional or statutory rights. *Campbell v. City of Portland,* 204 Or 654, 260 P 1094, 285 P2d

529, and *Hart v. State Industrial Accident Commission,* 148 Or 692, 38 P2d 698.

*State v. Reyes,* 209 Or 595, 303 P2d 519, recognized as valid a rule adopted by the Circuit Court for the Twenty-first Judicial District which required the appellant to serve on the respondent the proposed bill of exceptions before presenting it to the clerk of the court. *Campbell v. City of Portland,* 204 Or 654, 260 P2d 1094, held to similar effect concerning a corresponding rule adopted by the Circuit Court for the Fourth Judicial District, and *Hart v. State Industrial Accident Commission,* supra, is a similar holding concerning a rule written by the Circuit Court for Marion County. ORS 19.100, above quoted, which governs the tendering of the bill of exceptions, is silent upon the subject of service of the bill of exceptions upon opposing counsel.

■ We think that an application for the enlargement of time to present a bill of exceptions and the actual presentation of the bill to the court are sufficiently similar that the reasons which sustain as valid court rules requiring the appellant to serve upon the respondent the bill also render valid court rules which require service upon respondents of applications for enlargement of time to present bills.

■■ We have read carefully the rules of the Circuit Court for Multnomah County in search of one which requires service upon respondents of applications for the enlargement of time to tender bills of exception. We gave special attention to those cited by the respondent. We found none which makes such a requirement with clarity. Those upon which the respondent depends appear to be applicable to motions which are addressed to the presiding judge and which pertain to matters that occur before trial, although the situation is not free from doubt. We think that a rule of

the type that respondent has in mind should not be expressed in dubious terms. We observe from the record that the trial judge, before signing the third order which granted an extention of time, telephoned to the office of the respondent's attorney and spoke to one of the partners. According to a memorandum which the trial judge prepared, the following occurred:

"I inquired whether it was agreeable to give, as above stated, a so-called extension and he responded in some form, the exact language I cannot remember, and which was to the effect that it was satisfactory. Thereupon I signed the so-called order."

We believe that the telephone communication had the same effect as if the application for extension of time had been served upon opposing counsel.

It follows from the foregoing that the challenge to the bill of exceptions must be denied.

█ It is clear that the appellant did not comply with the requirements of ORS 19.070(3) when it sought to gain extensions of time for filing the transcript on appeal. That failure is made by ORS 19.030(3) a sufficient cause for the dismissal of this appeal. However, Oregon Laws 1943, ch 119, now ORS 19.030, has deprived the transcript on appeal of its previous province of conferring jurisdiction upon this court over the cause. The notice of appeal is now the jurisdictional turning point, and the importance of the transcript on appeal has become materially lessened. ORS 19.030(3) says:

"* * * The appellate court shall, upon good cause shown, relieve a party from his failure to comply with any of such provisions and may permit an amendment or performance of such act on such terms as may be just."

that is, if notice of appeal has been properly given. The appellant has moved to be relieved of its failure and, as we have seen, the transcript on appeal has been filed. The respondent makes no contention that omission to have filed it sooner inconvenienced her or delayed the appeal. The respondent does not claim that the appellant has failed to proceed promptly with the prosecution of the appeal. An affidavit of appellant's counsel states that "immediately after the court below had handed down an opinion on January 3, 1957, denying Appellant's motion for a new trial" he ordered a transcript of the evidence but did not receive it until two months later. He offers what appears to be a reasonable explanation for his failure to have produced a tendered bill of exceptions until April 2, and likewise a reasonable explanation of his failure to have made an earlier filing of the transcript on appeal.

Appellant's counsel states that he promptly sent to his adversary copies of all orders which granted the above-mentioned extensions of time.

It does not appear that the appellant's omission to have served the applications for extensions of time to file the short transcript delayed the prosecution of the appeal or inconvenienced anyone.

It follows from the above that the motion, in both of its alternatives, must be denied.

FIG. 6

*James Arthur Powers*, Portland, argued the cause for appellant. With him on the brief was Earle P. Skow, Portland.

*Thomas H. Tongue* argued the cause for respondent. With him on the brief were Hicks, Davis, Tongue & Dale, Portland, and Goldsmith, Siegel & Goldsmith, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and KING, Justices.

## SLOAN, J.

■ The jury awarded plaintiff a verdict for injury she sustained when she allegedly fell over boxes in the aisle of one of defendant's stores. From the ensuing judgment defendant appeals. The primary issue is the failure of the trial court to allow a motion for a directed verdict and for a judgment n.o.v. A review of the facts most favorable to plaintiff is necessary.

The store is one located at 820 S. E. Belmont in Portland. Plaintiff entered the store shortly before noon in the company of her son and small grandson for the admitted purpose of buying groceries. Neither plaintiff nor her son had been in the store before. They entered at the front of the store, plaintiff's son got a shopping basket or cart of the familiar kind and they proceeded to the meat counter at the rear of the store. The physical outlay of the store was similar to that of most self-service stores of this kind. The items of merchandise were displayed on long tiers of shelves running the approximate length of the store. Between

the shelves were aisles for the passage of customers to enable them to see and select the items desired. The aisles were estimated to be about five and a half or six feet in width. The shelves were about five feet high, wider at the base than at the top. The base of the bottom shelf was cut back or recessed under the outer edge of that shelf for about six or eight inches to a height above the floor level of about the same distance. It is assumed this is a "toe space," which we can best identify as being similar to that found in most kitchen cupboards and shelves.

After plaintiff and her son had completed their selection of meat from that counter they proceeded to the front of the store along one of the aisles we have described. The son was about ten feet ahead of plaintiff. She was looking along the shelves on one side of the aisle for soap. She testified:

"A. Well, I was walking along looking at the merchandise and suddenly my foot hit something.

"Q. Which foot?

"A. My right foot.

\* \* \* \* \*

"A. And I lost my balance and fell.

\* \* \* \* \*

"Q. What kind of an object was it?

"A. Well, it seems it was probably solid because it resisted my foot."

She fell on her left side with her feet to the "back of the store and my head to the front of the store." As she lay there she noticed two boxes about 24 inches from her feet, "and one of them was out of line." "They were lengthwise of the display counter." One was described as being against the display counter or perhaps partially within the toe space under the counter or shelves which we have mentioned. The other was described as sticking out into the aisle. This box was

the one nearest her feet. She described the boxes or cartons as being about six or eight inches high, about 12 or 14 inches wide and about 18 inches long. They were made of brown cardboard. Her son returned to assist her. He described the boxes, and their location, in about the same way. He did also say that they were labeled in some way but he could not remember what kind of a label. Another witness who had passed up this aisle a few minutes before the accident testified that she saw boxes or cartons in the aisle. This witness did not otherwise specify the precise location of the boxes.

The defendant relied on evidence to the contrary. Two other customers, who testified they saw plaintiff fall, swore that they examined the floor area to see what could have caused the fall and that they did not see any boxes or cartons. The manager of the store and three other employees testified that they were present immediately after the accident and that no boxes were present. We must assume the boxes were in the aisle. And it is a fair inference that plaintiff stumbled over one of them.

The basis of defendant's argument here is that the presence of the boxes does not violate the duty of the defendant to exercise due care for the safety of its patrons. It also contends that the boxes were in full view, readily apparent, and plaintiff was guilty of contributory negligence as a matter of law. The evidence presented by defendant at the trial was limited, almost exclusively, to the testimony that no boxes were there. However, as we have said, that issue is now resolved against the defendant. It did elicit some testimony as to the composition and color of the floor. This was of little value. To say a floor was green or brown or mottled means little. The spectrum of color is too great to enable one to visualize the appearance of any

given object by mere mention of color by name only. There was evidence that it was a clear day, but little other testimony as to lighting conditions within the store.

In this case we are not called upon to decide if defendant had knowledge that the boxes were in the aisle. The defendant admits that the boxes were placed there by defendant's employees and that they contained merchandise of the defendant, probably soap, to be placed upon the shelves. This imputes knowledge. *Briggs v. John Yeon Co.*, 168 Or 239, 251, 122 P2d 444. Therefore, cases like *Lee v. Meier & Frank Co.*, 166 Or 600, 114 P2d 136, have no application to this case.

The gist of the argument made here is based upon the disposition of some of the courts to apply different standards of care to both the owners and patrons of self-service stores. The defendant, for good reason, urges that we adopt the view expressed in *Fredericks Market v. Knox*, 66 So2d 251 (Fla) and *Smith v. American Stores Company*, 38 Del County (Pa) 39. In these two cases the court imposed upon the customer a higher degree of care when serving himself than in a place of business that provides service to the customer. These cases adopt the view that the customer gains a benefit from the self-service type of store and should be held to greater caution in avoiding hazardous conditions. *Casciaro v. Great Atlantic & Pacific Tea Co.*, 238 Mo App 361, 183 SW2d 833, is typical of the opposite extreme accepted by other courts. It is reasoned that the self-service type of store affords the merchant greater opportunity to command the eyesight of his customers. "Attention arresters" are to be found conspicuously displayed on the shelves and in the aisles of such a store. Accordingly, it has been held that when merchandising methods compel the attention of the customer away from careful lookout to the floor,

the proprietor of the store owes a greater duty to protect the movement of the customer's feet. See Torts-Contributory Negligence-Business Guest-Attention Arrester-Matter of Law or Fact, 2 Ala L Rev 373. Cases are collected at 26 ALR2d 675.

There is, in reality, no sound basis for applying either of the more extreme views we have mentioned. The self-service store assumes about as many different forms and merchandising schemes as there are types of trucks upon the highway. To apply the label of self-service to a given place of business and then impose upon that place of business a different standard of care than the store next door is impractical and unwise. We might as well, and just as logically, say that the driver of a log truck must adhere to a different standard of conduct than a driver of a flatbed truck or a passenger. car, for that matter. We decline to adopt either theory as a rule of law.

We are called upon to apportion our income between the impelling desires created for us by artfully contrived merchandising know-how. This be true whether it is a continuing pressure of advertising in all its forms or of the more instantaneous urge created by eye-appealing displays of merchandise. Either form can be, and is, demanding of our attention and power to resist. However, for a court to attempt to rule as a matter of law that one form or type of merchandising should adhere to a greater or lesser standard of care for the patron would require judges to have a much greater familiarity with each customer-inducing scheme than it is practical to assume. These are properly matters to be considered and measured by the jury in applying the test of due care. The facts and circumstances of the particular case must be for the jury to weigh. *Brown v. Slack*, 159 Neb 142, 65 NW2d 382, 385, and similar cases cited at 26 ALR2d 678.

The caution to be exercised in attempting to judicially fix precise standards of conduct in the varying activities of people was long ago expressed by Chief Justice Cooley of the Michigan Court with simplicity and directness:

"The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility. For when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury." *Detroit and Milwaukee R. R. Co. v. Van Steinburg*, 17 Mich 99, 120.

"* * * In framing standards the law seeks neither to generalize by eliminating the circumstances nor to particularize by including them; instead, the law seeks to formulate the general expectation of society as to how individuals will act in the course of their undertakings, and thus to guide the common sense or expert intuition of jury or commission when called on to judge of particular conduct under particular circumstances. Titles to land and the negotiability of bills and notes do not depend and ought not to depend upon circumstances. Such matters are governed by rules and are not left to juries or

to commissions. On the other hand what is due care in driving cannot be determined in the abstract once and for all for every driver who will ever drive. What is a reasonable railway service cannot be laid down in the abstract for an abstract railroad running through an abstract region and applied to all railroads thereafter by a logical process. These are standards, devised to guide the triers of fact or the commission in applying to each unique set of circumstances their common sense resulting from their experience." Pound, Administrative Application of Legal Standards, 44 ABA Rep 445, 456, 457.

See also "Particularizing Standards of Conduct in Negligence Trials," James and Sigerson, 5 Vanderbilt Law Rev 697.

 It has long been accepted that the merchant owes to his customer reasonable care to protect the customer from injury. This includes, but is not limited to, the duty to keep aisle and passageways reasonably safe.

"A storekeeper owes to customers the duty to exercise ordinary care to keep the aisles and passageways of his establishment in a reasonably safe condition so as not to unnecessarily expose patrons to danger from objects projecting into the aisles." 26 ALR2d 678.

The burden on the customer to also exercise due care requires no citation. In this case we believe the court was correct in submitting the case to the jury. When the trial judge overruled the motion for a directed verdict he mentioned the basic conflict in the evidence. The conflict in testimony required the trial court, and this court, to accept as true the actual presence of the boxes, their size and approximate location. However, the jury had to decide if there were boxes present at all. If it so decided, then it was called upon to deter-

mine if the presence of the boxes at the particular spot was a failure of due care. We cannot hold as a rule of law that the placing of boxes in the aisle of a busy store in the manner described in this case is not, under any circumstances, lack of due care as urged by the defendant. Each case must be weighed by its own particular facts and circumstances. In this instance the jury may have decided that the peculiar location of the boxes was particularly hazardous. The evidence reflected that the boxes were unopened. They had been put there and left. No one was engaged in removing merchandise from the boxes and placing it on the shelves. It could have been found that they were situated exactly at the place that it could be anticipated that a customer would place his feet when reaching for items on the shelf. The method of construction of the shelf is indicative that it was made for and intended to be used as foot space for customers. It may well be more hazardous to impose a stumbling block in that location than in the center of the aisle. In attempting to prove that no boxes were there the manager testified that it was contrary to a standard of conduct followed at the store. The jury may have thought this an admission that it would be hazardous to permit boxes and cartons in the aisle. In any event, the conflict and the inferences we have mentioned were for the jury to resolve.

■ Was plaintiff contributorily negligent as a matter of law? For the reasons already expressed, we think not. The jury could have found the boxes were in plain sight, or they could have found they were partially tucked into the toe space we have described and not readily apparent. The plaintiff testified that as she started up the aisle, "I was just looking where I was going and I was looking at the shelves and shopping just like anyone else does in these stores." It was for

the jury to decide if she was giving adequate attention, under the circumstances, to her feet. If she should have been alerted to the probability of an obstacle at the spot where she could anticipate moving to or standing in when reaching the shelf was for the jury to decide.

The defendant also relies upon a statement alleged to have been made by plaintiff at the time of the accident. The manager testified that plaintiff said she had turned her ankle. If this were true it could have referred to the pain she then experienced or to the cause of her fall. It was for the jury to pass upon this evidence as well as the inference urged that plaintiff was not to be believed.

Defendant's other assignments are directed at the failure of the trial court to give certain requested instructions. The matter contained in each of the requests was otherwise given by the court. It is not necessary that we take time and space to set out the request and the instruction given by the court which covered the subject. The trial judge did this in detail in his memorandum opinion overruling the motion n.o.v. or for a new trial. It is of interest only to these parties and does not bear repetition. We have given attention to all the authority cited by defendant though not mentioned in this opinion.

The judgment is affirmed.