Argued May 2, affirmed June 14, 1972

BURKE, *Respondent, v.* RACHAU ET AL,
*Appellants.*

497 P2d 1154

*George M. Joseph,* Portland, argued the cause for appellants. With him on the briefs were Bemis, Breathouwer & Joseph, Portland, and Harry F. Samuels, Walter H. Sweek and Vergeer, Samuels, Roehr & Sweek, Portland.

*Carl G. Helm,* La Grande, argued the cause for respondent. With him on the brief were Helm & Wasley, La Grande.

TONGUE, J.

This is an appeal from an order denying a mo-

tion to set aside a default judgment in a personal injury case.[1]

The question whether a trial court has abused its discretion in refusing to set aside a default judgment ordinarily depends upon the facts and circumstances of each case. In this case it appears from the affidavits filed in support and in opposition to that motion that on May 12, 1969, plaintiff's attorney wrote a letter to an insurance adjuster employed by defendants' insurance company. By that letter the adjuster was informed that plaintiff had retained the attorney to represent her and that he would forward to the adjuster a list of her medical "specials." This was in response to a previous letter from the adjuster to the plaintiff indicating that defendants were insured by that company and requesting copies of medical bills.

The adjuster then called plaintiff's attorney by telephone and said that he had a statement from plaintiff indicating that defendants were not responsible and suggesting that the attorney "drop the matter." At that time the adjuster was told that if he would send that statement to the attorney and if it then appeared that the facts were "otherwise than [as] related" to him by plaintiff he would ask her to obtain other counsel. According to plaintiff's attorney, defendants' insurance adjuster "promised to forward the statement immediately," but never kept that promise.

After waiting until November 10, 1969, plaintiff's attorney sent a second letter to defendants' insurance adjuster reminding him of that promise and stating that the statute of limitations would run in

---

[1] For a previous decision on mandamus proceedings involving this case see Rachau v. Brownton, 260 Or 459, 490 P2d 170 (1971).

"the immediate future," with the result that it would be necessary to file a complaint unless the case could be settled. Again, defendants' insurance adjuster failed to send the promised statement and made no response to that letter.

Having heard nothing from the adjuster, plaintiff's attorney then prepared and filed a complaint on December 5, 1969, praying for $15,000 in general damages and $1,006.65 in special damages. On that same day, the complaint was served upon defendants in the same county, with the usual summons to the effect that unless defendants appeared and answered the complaint within 10 days, judgment would be taken against them.

On or about December 11, 1969, the insurance adjuster made his only further contact with plaintiff's attorney by calling his office by telephone. According to the affidavit of the associate of plaintiff's attorney (who was not in) the adjuster told him that the insurance company would employ an attorney to defend the case and asked for an extension of time for appearance. Also, according to that affidavit, "I asked how long he needed. He stated he would like until December 19, 1969, and I stated that this was satisfactory." The associate of plaintiff's attorney, according to his affidavit, then placed in the file a memorandum stating that the adjuster "called wanted time to make an appearance—I gave him to 12/19/69."

The affidavit of the adjuster, however, denied that portion of the affidavit and stated that he gave the attorney the name of a witness who would testify that plaintiff was intoxicated at the time of the accident and was told the attorney "would contact the witness and would contact me at a later date," and

that "his firm would not take a default without notice to me."

The associate of plaintiff's attorney, however, by his affidavit denied any agreement for extension of time to appear "except as hereinabove stated" (i.e., an agreement to extend such time to December 19, 1969) and "specifically" denied "that I stated or agreed that if an appearance was necessary [the adjuster] or anyone else, would be so advised."

No appearance was then filed on behalf of defendants, however, and nothing further was heard by plaintiff's attorney from the adjuster.

On February 20, 1970, after waiting for two months, plaintiff's attorney filed a motion for default and default was entered on that date. No appearance on behalf of defendants had been made by then and that motion was not served on defendants personally. Neither was notice given to the adjuster.

On April 15, 1970, plaintiff's attorney filed an "application" for "relief demanded in plaintiff's complaint." On May 20, 1970, no appearance having yet been made on behalf of defendants, "proof" of defendants' negligence and plaintiff's injuries was offered and the court entered judgment for $15,000 in general damages and $951.65 in special damages.

On June 4, 1970, defendants filed a motion to set aside the default judgment, supported by the affidavit of one of defendants' attorneys setting forth his version of the conversation and agreement in December 1969 between the insurance adjuster and the associate of plaintiff's attorney, as previously stated. A proposed answer denying negligence and alleging contributory negligence was also tendered. A counter-

affidavit by the associate of plaintiff's attorney was then filed on June 12, 1970, and on July 11, 1970, a reply affidavit by the insurance adjuster was filed. The affidavits have been previously summarized.

On July 20, 1970, a hearing was held on defendants' motion to set aside the default judgment. No witnesses were heard and no record was made of that hearing, at which the court orally denied defendants' motion.

On July 23, 1970, defendants filed a "motion for reconsideration." In support of that motion defendants filed a legal memorandum in which it was contended that in previously denying defendants' motion to set aside the default judgment the trial court "was unaware of the custom throughout the insurance industry" that "cases are often settled after filing and negotiations are often carried out after filing and before the case is referred to defense counsel." In further support of that contention defendants filed a "supplemental affidavit" of the insurance adjuster stating that the custom is to the effect that when a lawsuit is filed the claims adjuster will "frequently" contact plaintiff's attorney to request an extension of time in which to appear and that:

> "* * * Whenever an extension of time is given, the claims adjuster customarily relies upon the representation of plaintiff's counsel that no default will be taken until a demand is made by plaintiff's attorney that an appearance be made and customarily such plaintiff's counsel will afford the time to appear for such period as may be necessary for the claims adjuster to forward defensive documents to counsel to appear on behalf of the defendant or defendants. This is an established custom between insurance claims departments and members of the Bar and claims adjusters uni-

versally in this state consider that such an agreement is binding and that a default will not be taken once a plaintiff's counsel knows the identity of the insurance company involved and the identity of the insurance adjuster handling the claim."

That affidavit was served on plaintiff's attorney on the morning of September 14, 1970, the date on which the hearing was held on that motion. At that hearing plaintiff's attorney denied the existence of such a custom and contended that, in any event, the court had previously found in favor of plaintiff "with respect to the agreement of December 6" and that "this determines the matter * * *." The trial court then again denied defendants' motion, after which defendants made an offer of proof by testimony of the adjuster and attorney. That testimony, for the most part, covered the same matters as previously stated by the affidavits, including the further contention relating to the existence of a custom.

On October 19, 1970, the court entered a written order denying defendants' motion to set aside the default judgment. That order set forth specific findings of fact, including a finding of fact that shortly after the filing of the complaint there was a conversation between defendants' insurance adjuster and the associate of plaintiff's attorney in which the adjuster said that his company would employ an attorney to defend the action and asked for, and was granted, an extension of time for an appearance until December 19th. The order of the court also recited the following rules of that court:

"RULE 2. FILING OF PLEADINGS.

"a. If additional time is required by a party to make an appearance an application should be filed

with the Court within the time required for such appearance requesting additional time . . .

## "RULE 10. STIPULATIONS.

"No agreement or stipulation between the parties or their attorneys concerning any of the proceedings before the court will be regarded or enforced unless the same be made in open court or reduced to writing and subscribed by the party or the attorney to be bound thereby."

The order then stated that no such application, agreement or stipulation was made. Finally, the order stated, as conclusions of law, that it had been agreed that defendants have an extension of time for appearance until December 19, 1969; that "no further or other agreement was made between plaintiff and said company or defendants"; that defendants were in default, and that "there was no mistake, inadvertence, surprise or excusable neglect on the part of defendants."

Defendants contend that in denying that motion the trial court abused its discretion and that "the ends of substantial justice" require that the default judgment be set aside, quoting our recent decision in *Coleman v. Meyer*, 261 Or 129, 493 P2d 48 (1972), in which we said, at p 85:

"* * * The action of a trial court in refusing to set aside a judgment or a decree will not be overruled except for a manifest abuse of discretion. * * * However, the section should be construed to the end every defendant should have an opportunity to have his day in court, * * * and the court's discretion is controlled by fixed legal principles and must not be exercised arbitrarily, but, rather, it should be exercised to conform with the spirit of the statute and not to defeat the ends of substantial justice * * *."

■ After examining the entire record, and after applying the foregoing test to the facts of this case, we find that there was no "manifest abuse of discretion" by the trial judge in denying defendants' motion to set aside the default judgment in this case.

It may be, as contended by defendants, that it is common, if not customary, for insurance adjusters to request and obtain informal agreements for "open" extensions of time for appearance in personal injury cases in order to provide time for further settlement negotiations before turning cases over to attorneys and that it is also common, if not customary, in such cases for plaintiffs' attorneys to notify the insurance adjusters before taking default judgments.

■ It is well established, however, that custom, no matter how firmly established, cannot prevail over the clear and unambiguous terms of a contract. *Bliss v. Southern Pacific Co. et al,* 212 Or 634, 640, 321 P2d 324 (1958), and cases cited therein.

In this case, although the testimony was in conflict, there was substantial evidence to support the findings of the trial court that defendants' insurance adjuster did not request an "open" extension of time for appearance in order to provide time for further settlement negotiations; that, on the contrary, he informed plaintiff's counsel that "his company would employ an attorney to defend the action" and requested an extension of time for appearance only until December 19th; that this was the agreement between the parties for extension of time in this case, and that there was no agreement for either an "open extension" or that plaintiff's counsel would notify the adjuster before taking a default judgment.

It is contended by plaintiff that an additional

reason for such a result in this case is that custom will not be recognized where contrary to the express terms of a statute, with the result that the alleged custom in this case should not be recognized because it is contrary to the local rules of the trial court. Defendants do not contest the validity of such local rules.

We have held, however, that a local rule providing that a stipulation for extension of time will not be recognized unless previously approved by the court is invalid if strictly enforced because such a rule, as thus applied, would be contrary to the statutes of this state in that it would prohibit the exercise of discretion by the court to permit the late filing of a pleading, as expressly provided by statute. *Bank of Beaverton v. Godwin et al,* 124 Or 166, 169, 264 P 356 (1928). In that case, however, this court affirmed an order by the trial court permitting the late filing of a pleading, in the exercise of its discretion. See also *Miller v. Safeway Stores,* 219 Or 139, 145-46, 312 P2d 577, 346 P2d 647 (1959).

It is true that reference was made in the order denying defendants' motion to a similar local rule of procedure. However, it is clear both from the terms of the order and also from the record of the hearing on September 14, 1970, that the basis for that order was not that the oral stipulation for extension was invalid as in violation of that local rule. Instead, it is clear that the order was based upon the finding of fact and the conclusion of the court that the parties had agreed upon an extension of time until December 19, 1969, for appearance by defendants; that on February 20, 1970, defendants were in default for want of an appearance, and that "there was no mistake, inadvertence, surprise or excusable neglect on the part

of the defendants" in the entry of the default judgment on May 20, 1970. Indeed, the trial judge made it abundantly clear at that hearing that while he did not "view favorably" informal arrangements for extension of time, in view of these local rules, he was "not ruling on that basis," but "upon the fact that the defendants did not make an appearance within the time that was granted by plaintiff."

In addition, if the trial judge, as trier of the facts, believed the affidavit of the associate of plaintiff's attorney and disbelieved the affidavit and testimony of defendants' insurance adjuster, as he was entitled to do, and apparently did, he was also entitled to find that this was an extreme case of "inexcusable neglect" by the adjuster for defendants' insurance company. According to the record, the only actions taken by the adjuster of any significance during the period of over a year that elapsed between the first letter to him from plaintiff's lawyer and the taking of the default judgment were two telephone calls to plaintiff's attorney, coupled with a complete failure to keep the promises made on those two occasions or to otherwise respond to the letters from plaintiff's attorney. As previously stated, the local rules of court may be invalid if strictly applied to the practice of informal stipulations for extension, which was not done by the trial court. Nevertheless, in determining whether, in the exercise of its discretion, the defendants were entitled to claim the benefit of "mistake, inadvertence, surprise or excusable neglect," the trial court was entitled to consider these facts, as well as the need to discourage practices which may result in unnecessary delays in the administration of justice.

Defendants have expressed concern that such a result in this case is unduly harsh as applied to "de-

fendants whose sole representation was by an insurance adjuster" who thought that he had obtained an "open" extension of time. Defendants also question the ethics of plaintiff's attorney by quoting from Rule 14(a) of the Code of Trial Conduct of the American College of Trial Lawyers which provides, in part, that when an attorney "knows the identity of a lawyer representing the opposing party" he should not take a default without prior notice to that lawyer. Defendants urge that "a similar rule ought to prevail where, so far as plaintiff's counsel knows, defendant(s) [are] not represented by counsel."

That portion of Rule 14(a) as quoted by defendants and approved by this court in *Ainsworth v. Dunham*, 235 Or 225, 231, 384 P2d 214 (1963), is confined, by its terms, to cases in which the opposing party is known to be represented by a lawyer and thus has no application to this case, except for whatever persuasive effect it may have by way of analogy. A similar contention may be made that because plaintiff's attorney had the duty, under other rules of legal ethics, to give timely notice to opposing counsel of his intention not to follow "local customs of courtesy or practice," he had a duty to give the same notice to defendants' insurance adjuster.[2]

---

[2]Rule 14(a) also provides that:

"A lawyer should adhere strictly to all express promises and agreements with opposing counsel, whether oral or in writing, and should adhere in good faith to all agreements implied by the circumstances or by local custom."

The terms of Rule 14(a) are not expressly included in the Code of Professional Conduct adopted by the American Bar Association effective as of January 1, 1970, and approved by the Oregon State Bar as of December 30, 1970. Canon 7 of that Code, however, after providing that "a lawyer should represent a client zealously

As previously stated, however, there was substantial evidence to support the finding of the trial court that there was an express agreement between plaintiff's attorney and defendants' insurance adjuster that defendants would engage counsel and file an appearance by December 19, 1969, contrary to defendants' claim that both the prevailing custom and the express agreement in this case were for an "open extension," with no default to be taken without prior notice. Thus, the very terms of that agreement, as found by the trial court, were sufficient to put defendants' insurance adjuster on notice that plaintiff's attorney did not intend to follow any custom or practice to the contrary.

If, however, defendants' position is to be considered to be the same as though it had been represented by counsel, insofar as considerations of legal ethics are concerned, then it would also follow that it was equally "dishonorable" for defendants and their insurance adjuster to fail to perform the agreement,

---

within the bounds of the law" adds various "ethical considerations", including the following:

"EC 7-38 * * * He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so."

See also Disciplinary Rule 7-106(C)(5) to the same effect, as set forth in the same Code of Professional Responsibility.

Prior to the adoption by the Oregon State Bar of the foregoing Code of Professional Conduct, and effective during the times involved in this case, it was provided by Rule 29 of the Rules of Professional Conduct of the Oregon State Bar that:

"A member of the state bar shall not ignore known customs or practices of the bar or of a particular court, even when the law permits, without giving timely notice to opposing counsel. As far as possible, agreements affecting the rights of clients should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by rules of court."

as found by the trial court, to engage counsel and to make an appearance on or before December 19, 1969.[9]

It has also been said that no client has any right to "trade" upon courtesies extended to his lawyer.[10] Neither, in this case, did defendants have any right to "trade" upon the courtesy extended by plaintiff's attorney to defendants' insurance adjuster by the agreement that defendants' time for appearance be extended to December 19, 1969.

In addition, as stated in Drinker, Legal Ethics 195-196 (1953):

> "Although a lawyer should not take technical advantage of inadvertent oversights or defaults by his adversary which the court would properly remedy, yet where a delay by the opposing lawyer is not because of illness or accident, he may not properly waive it and not inform the client. If it is proper that it be corrected, the court will do it."

Based upon all of these considerations, it is our opinion that when plaintiff's lawyer extended to defendants' insurance adjuster the courtesy of an agreement that defendants would have to and until December 19, 1969, in which to make an appearance in this case, defendants were given adequate notice at that time that unless they performed that agreement plaintiff's attorney was free to apply to the court for entry of a default judgment, without further notice. It then became the duty of the court to decide whether to grant plaintiff's application for a default judgment and, subsequently, whether to grant defendants' motion to set aside that default judgment.

---

[9] See Rule 29 of the Rules of Professional Conduct of the Oregon State Bar, as then effective and as quoted in note 2.

[10] See Drinker, Legal Ethics 194 (1953).

■ The primary issue to be decided on this appeal is not whether plaintiff's attorney was guilty of a breach of legal ethics, but whether the trial judge was guilty of a "manifest abuse of discretion" in finding that "there was no mistake, inadvertence, surprise or excusable neglect" by *defendants*. Thus, while defendants' contention that plaintiff's attorney failed to give notice of his intention to apply for an order of default was a matter to be considered by the trial court in making that determination and in the exercise of that discretion, we find, for reasons already stated, that there was ample evidence to support the decision by the trial judge in this case.

This is not the case of an inexperienced layman who unwisely seeks to escape the expense of hiring an attorney by undertaking direct negotiations for settlement of a complaint filed against him. One of the primary duties undertaken by an automobile casualty insurance company in consideration of the premium paid to it is the duty to provide protection to an insured in the event that a legal proceeding is filed against him, including the duty to see that no default judgment is taken against the insured. It may be proper for an insurance adjuster to attempt to settle a case even after the filing of a complaint. But where, as in this case, the insurance adjuster ventures into the legal arena by undertaking to arrange for an extension of time to file an appearance, any neglect or incompetence on his part in making such arrangements is imputable to both the insured and the insurance company.

Thus, because of the nature of the duty undertaken by an insurance company to protect an insured in the event of litigation, it can hardly claim the status

of an "unrepresented layman" or complain that the "sole representation" of its insured "was by an insurance adjuster."

■ As for the, further suggestion by defendants that their constitutional rights to due process of law were violated by the taking of a default judgment without notice, the original summons provided sufficient notice that unless an appearance was made within the time specified by statute a judgment would be taken against defendants. The oral agreement extending time for appearance to and until December 19, 1969, did no more than to extend the period for appearance to a specified date and it was implicit from that agreement that plaintiff would be entitled to take a default judgment if no appearance was filed by that date.

■■ Defendants also contend that the trial court failed to give consideration to defendants' claim that they had a meritorious defense and that they acted with diligence in filing a motion to set aside the default judgment. We agree that these are necessary requirements to be established by a defendant who seeks to set aside a default judgment. See *Stirling v. Dari-Delite, Inc.*, 262 Or 359, 491 P2d 1168 (1971). We also agree that they are important elements to be considered by the trial judge in the exercise of his discretion in granting or denying such a motion. The proof of these requirements, however, does not of itself establish the further requirement of "mistake, inadvertence, surprise or excusable neglect," as specifically required by ORS 18.160.

For all of these reasons we affirm the order of the trial court denying defendants' motion to set aside the default judgment in this case.

BRYSON, J., dissenting.

In the case at bar, plaintiff's attorney had been negotiating with the adjuster for defendants' insurance company in an effort to settle his client's claim for injuries sustained while getting out of the defendants' automobile. No settlement was reached and on December 5, 1969, plaintiff's complaint was filed, demanding $15,000 general damages and $1,006.65 special damages. On December 11, 1969, the insurance adjuster again contacted the office of plaintiff's attorney and was granted additional time to make an appearance. The affidavit of associate attorney for plaintiff and the adjuster differ as to what was agreed to between them, but the important fact is that the plaintiff's counsel did transact business with the adjuster after the filing of the case and some extension of time was granted.

On February 20, 1970, an order of default was entered against defendants and on April 14, 1970, an "application" was filed with the court, seeking the relief demanded in plaintiff's complaint. On May 20, 1970, the court entered judgment against defendants for $15,000 general damages and $951.65 special damages, the total judgment being slightly less than the full amount demanded in plaintiff's complaint. The record does not disclose that notice of the order of default, or of the April 14, 1970, "application" for relief, or of the hearing of May 20, 1970, for default judgment was sent to defendants or their insurance company or its adjuster.

On June 2, 1970, defendants filed their motion to set aside the default judgment and tendered an answer setting forth a meritorious defense. The motion was denied.

In *Ind. Leasing v. Roberts Myrtlewood,* 237 Or 376, 378, 391 P2d 744 (1964), this court stated:

"Counsel should apply for *ex parte* defaults only after scrupulous attention has been given to the relevant statutes, the rules of the court, and the rights of the adverse party. In the case at bar, we assume that the procedure followed by plaintiff's counsel was inadvertent. In any event, the trial court should have set aside the default when it appeared that unresolved questions of fact remained in the case. [Citations omitted.]"

*Snyder v. Consolidated Highway Co.,* 157 Or 479, 72 P2d 932 (1937), is considered a leading case on the trial court's discretion in setting aside an order and judgment by default on statutory grounds provided in ORS 18.160. In *Snyder,* at pages 484-85, this court reversed the trial court's order denying a motion to set aside a default judgment and held:

"As a general rule the court looks with more favor upon the application for relief of a defendant in default than upon a similar application by a defaulted plaintiff: *Capalija v. Kulish,* 101 Or. 666 (201 P. 545); *McAuliffe v. McAuliffe,* 136 Or. 168 (298 P. 239).

"Section 1-907, Oregon Code 1930 [now ORS 18.160], provides:

" 'The court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done after the time limited by this code, or by an order enlarge such time; and may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.'

"In several decisions this court has construed this statute liberally to the end that every litigant shall have his day in court and his rights and

duties determined only after a trial upon the merits of the controversy. In the case of *McFarlane v. McFarlane,* supra, where the lower court denied the motion to set aside the default decree, this court reversed the case, and, speaking by Mr. Justice Wolverton, at page 363, said:

" 'Ordinarily, if he presents reasonable grounds excusing his default, the courts are liberal in granting relief, for the policy of the law is to afford a trial upon the merits when it can be done without doing violence to the statute and established rules of practice that have grown up promotive of the regular disposition of litigation.'

"The same learned justice construed section 1-907, Oregon Code 1930, in *Thompson v. Connell,* supra, at page 235, where we find recorded the following language:

" 'True, the grant of such relief rests within the discretion of the court, but the discretion here spoken of is an "impartial discretion, guided and controlled in its exercise by fixed legal principles;" "a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to defeat the ends of substantial justice," and for a manifest abuse thereof it is reviewable by an appellate jurisdiction.' See also *Fildew v. Milner,* supra.

"In *McCoy v. Huntley,* supra, Mr. Chief Justice Moore, as shown on page 236, said:

" 'The authority conferred by statute upon a court to vacate a judgment or a decree * * * is not an arbitrary power, to be employed at pleasure in granting or denying the summary relief invoked, but is a legal discrimination, to be exercised in furtherance of justice, and in accordance with the rules of modern jurisprudence.' "

Again, in *King v. Mitchell,* 188 Or 434, 214 P2d 993 (1950), citing *Snyder* with approval, this court reversed the trial court's order denying the

motion to set aside the judgment and stated, at page 442:

"The statute [ORS 18.160] is to be construed liberally to the end that every litigant shall have his day in court and his rights and duties determined only after a trial upon the merits of the controversy. *Marsters v. Ashton,* 165 Or. 507, 516, 107 P. (2d) 981; *Snyder v. Consolidated Highway Company,* supra, 157 Or. 484; *Peter v. Dietrich,* 145 Or. 589, 594, 595, 27 P (2d) 1015; *Hanthorn v. Oliver,* 32 Or. 57, 62, 51 P. 440, 67 Am. St. Rep. 518."

The trial court was not wrong in being impressed by the insurance adjuster's lack of attention to the litigation pending in his court. However, once an attorney grants an extension of time in which to make an appearance, without an order of the court approving such extension, to an opposing attorney or to a party in propria persona or even to an agent of a defendant in a pending action, notice of intention to apply to the court for a judgment by default should be given to the defendant against whom the judgment is to be taken.

In the present case, judgment by default was taken on May 20, 1970. On June 2, 1970, defendants filed their motion to set aside the default judgment and filed a meritorious answer. The record does not disclose that witnesses were missing or that the plaintiff would be prejudiced by a trial on the merits. From a review of the affidavits and the answer filed by defendants, a fair conclusion requires that the default judgment be set aside and the defendants be allowed their day in court to try the case before a jury.

For these reasons I dissent.

O'CONNELL, C. J., and McALLISTER, J., join in this dissent.