154 So.2d 597 (1963)
Mrs. C. Arthur (Naomi Nalty) PROVOST et vir, Plaintiffs and Appellees,
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., et al., Defendants and Appellants.
No. 872.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1963.
*598 Voorhies, Labbe, Voorhies, Fontenot & Leonard, by J. Winston Fontenot, Lafayette, for defendants-appellants.
Provost & Ernest, by George D. Ernest, Jr., New Iberia, for plaintiffs-appellees.
Before TATE, SAVOY and HOOD, JJ.
*599 HOOD, Judge.
This is a tort action instituted by Mr. and Mrs. C. Arthur Provost against The Great Atlantic & Pacific Tea Company and its insurer, Aetna Casualty and Surety Company, arising out of an accident which occurred in a self-service type grocery store, or supermarket, operated by the insured defendant in New Iberia, Louisiana. Mrs. Provost alleges that she tripped and fell on some boxes which were stacked on the floor in one of the aisles of the store, and that the fall was caused by the negligence of defendant's employees in placing the boxes in the aisle and in allowing them to remain there without warning customers of the danger. She demands damages for the personal injuries allegedly sustained by her as a result of the fall, and Mr. Provost, as head and master of the community, claims damages for medical expenses incurred by him on his wife's behalf.
Defendants answered denying the allegations of negligence, and specially pleading contributory negligence on the part of Mrs. Provost. After trial on the merits, judgment was rendered by the district court in favor of Mrs. Provost for the sum of $15,000.00, and in favor of Mr. Provost for $3,741.48. Defendants appealed, and plaintiffs have answered the appeal praying that the award to Mrs. Provost be increased.
The trial judge, in his excellent written reasons for judgment, has stated the facts accurately and concisely, and we adopt the following portions of his opinion as our own:
"Mrs. Provost was a regular customer at the store and shortly after noon on November 30, 1960, entered it with the intention of purchasing groceries. She went in through the front, then to the left aisle where she picked up three loaves of bread, then down this aisle to the meat counter at the rear of the store. She ordered some ham there. While the ham was being sliced, she continued to the other side of the store to get a jar of mayonnaise and some frozen crab meat. The mayonnaise was on a counter that faced the inside of the right aisle and the crab meat was across this aisle, at the frozen food counter. Thus, while getting the mayonnaise her back was turned to the frozen foods. When she turned around to go get the crab meat, she struck her left foot on some hard object, she testified. The object was a stack of cardboard boxes filled with bottles and jars. She fell on the boxes and then to the floor. As a result she suffered a broken and dislocated hip.
"These boxes were stacked on the floor adjacent to a display island that was in the aisle between the mayonnaise counter and the frozen foods.

* * * * * *
"The aisle in question measures approximately 8½ feet wide. The display island is about 3 feet wide, 6 feet long and about 30 inches high. It was in the middle of the aisle. There was therefore a space of about 2¾ feet, or 33 inches, on each side of the island remaining as passageways for the customers.
"The display island had merchandise and placards on it. The merchandise was about 5 inches high and the cards measured 11" x 14". The total height of the island therefore was nearly 4 feet.
"The stack of boxes upon which Mrs. Provost fell was about 30 inches high. They were on the opposite end of the island from which she approached.

* * * * * *
"* * * Mrs. Provost approached the island from the rear of the store, as many customers would be expected to do, and the boxes were hidden from her view because they were some 18" lower than the displays on the island. It was not possible for her to see them under these circumstances. Had she approached the counter from the front *600 she could have easily seen the boxes and the situation would be different had she fallen over them. Further, she said she had never seen boxes there before.
"Another significant fact is that the aisle in which Mrs. Provost was standing was so narrow that she could not see any distance ahead when she turned around to go across the aisle to the frozen foods."
Under these facts the trial judge concluded "that the proximate cause of Mrs. Provost's mishap was the negligence of the employees in placing and leaving the boxes in the aisle, as they did, and that her falling over them was not due to her negligence." In support of their contention that the trial judge erred in reaching these conclusions, defendants argue that the boxes located at the end of the display island did not constitute a potential danger to customers, and accordingly, that the defendant storekeeper was not negligent in failing to provide a safe passageway for its customers. In the alternative, defendants contend that Mrs. Provost was negligent in failing to see the boxes before she stumbled over them, and that plaintiffs are barred from recovery because of her contributory negligence.
The law in this State is settled to the effect that a person who enters a store for the purpose of trade occupies the status of an invitee or business visitor, and that the owner or proprietor of such a store must exercise ordinary care and prudence to keep the aisles, passageways, floors and walks in a reasonably safe condition for his customers. Although the law imposes a duty of reasonable care toward the invitee, it does not make the storekeeper the insurer of the safety of persons properly on the premises, and his liability does not arise unless and until it is established that the injury or loss was caused by his negligence. The storekeeper will be held liable if he is aware of, or by the exercise of reasonable care should have discovered, the existence of an object projecting into the aisle which exposes patrons to danger and thereafter he fails to remove the danger or to warn the customer of it. Peters v. Great Atlantic & Pacific Tea Company, La.App. 2 Cir., 72 So.2d 562; Cannon v. Great Atlantic & Pacific Tea Company, La.App. 3 Cir., 146 So.2d 804 (and cases cited therein); Reid v. Monticello, La.App. 1 Cir., 33 So.2d 760 (remanded to Court of Appeal on other grounds, 215 La. 444, 40 So.2d 814; and see La.App., 44 So.2d 509); Vogts v. Schwegmann, La.App.Orl., 56 So.2d 177; Lindsey v. Travelers Indemnity Company, La.App. 2 Cir., 111 So.2d 153 (Cert. denied); Bowers v. Lumbermens Mutual Casualty Company, La.App. 2 Cir., 131 So.2d 70 (Cert. denied); Levine v. Hartford Accident & Indemnity Company, La.App. 3 Cir., 149 So.2d 433; Richards v. Schwegmann Brothers Giant Super Markets, Inc., La.App. 4 Cir., 151 So.2d 142.
The facts in the instant suit are similar to those which were presented in Vogts v. Schwegmann, supra. In that case a box containing beer bottles had been placed by defendant's employees at the end of and against the cashier's counter. The plaintiff stumbled over this box as she left the cashier's counter and turned to her left. The court, finding that the defendant storekeeper was negligent in failing to remove or to warn customers of the box and that plaintiff was free from contributory negligence, said:
"* * * It must be conceded, without equivocation, that a beer box upon the floor of the passageway of a super market is potentially dangerous to the patrons of the store, * * *
"* * * the `box' was more or less completely obscured from her vision by the widthway and height of the cashier's counter, which was twenty inches in width, thirty and one-quarter inches in height and eight feet in length. It is difficult to conceive of a more complete accidental visual obstruction. Plaintiff had just been `checked out' by the cashier, where her attention had *601 been absorbed in receiving and paying for the `forgotten item', and had walked approximately fifty-four inches, and emerged into the customers' passageway, where she had a right to be, when she was caused to fall by the unexpected presence of a `beer box' concealed by the height and widthway of the cashier's counter. It is most obvious that in her involuntary occupation of a state of ignorance, plaintiff was unable to perceive the `beer box.' A fortiori, she was not negligent in failing to exercise precaution commensurate with the potentially dangerous existing circumstances."
In Reid v. Monticello, supra, the plaintiff, a patron in defendant's self-service grocery store, stumbled and fell on a magazine rack which extended into the passageway provided for the use of customers. In holding that the storekeeper was negligent in permitting the rack to remain in the passageway and that plaintiff was free from contributory negligence, the court said:
"The law does not make the storekeeper an insurer of his customer's safety but it imposes upon him the duty to provide a safe place for his customers to trade with him. A safe place necessarily implies a clear aisle or passage-way through which the customer can walk in safety in pursuing the course of business for which he entered the store, that is the inspection and purchasing of the goods, wares and merchandise as displayed on the shelves and counters. Ransom v. Kreeger Store et al., La.App., 158 So. 600. Mrs. Reid was on her way to resume this part of her business in the store when she tripped into the wire rack which had negligently been left in her passageway by an employee of the defendant Monticello, and for such negligence Monticello and his insurance carrier were correctly held liable." (33 So.2d 760, 763).
In Lindsey v. Travelers Indemnity Company, supra, a storekeeper was held to have been negligent and liable in damages for permitting a painter's cloth to remain on the floor of a self-service type grocery store. And, in Huber v. American Drug Stores, 19 La.App. 430, 140 So. 120 (Cert. denied), a customer in a drug store was permitted to recover for the injuries she sustained when her foot came in contact with the glass from a broken jar which an employee of the store had swept into a pile at the edge of the counter.
Defendants have called our attention to the cases of Knight v. Travelers Ins. Co., La.App. 1 Cir., 32 So.2d 508; Lejeune v. Hartford Accident & Indemnity Company, La.App. 3 Cir., 136 So.2d 157 (Cert. denied); and Morel v. Franklin Stores Corp., La.App.Orl., 91 So.2d 42 (Cert. denied), in each of which cases recovery was denied a customer who tripped over an object in the passageway of a store. In our opinion, however, these cases are distinguishable from the instant suit. In the Knight case plaintiff stumbled over some well lighted steps, which clearly should have been seen by the customer before reaching them. In the Lejeune case we denied recovery to a plaintiff who tripped and fell over a three-foot-high chair in an aisle of the store, because we found that the chair was clearly visible to anyone approaching it and the evidence did not show that it had been placed in the aisle by defendant's agents or that defendant had any knowledge, actual or constructive, that it was in that location. In the Morel case recovery was denied where plaintiff tripped over a three-fourths inch metal conduit affixed to a carpeted floor. This conduit, however, was not in an aisle maintained for the general public, but was in a narrow passageway behind the counter, in a place reserved almost exclusively for employees of the store, and also it was clearly visible to anyone using that passageway.
Defendant's store in this case was a "self-service" type store, in which its *602 merchandise was displayed on counters or on shelves so that customers could inspect the merchandise as they walked in the aisles or passageways of the store. The storekeeper certainly intended that his customers would devote the major part of their attention to the merchandise which was being displayed, rather than to the floor to discover possible obstructions in the aisle, and in our opinion that circumstance must be considered in determining the degree of care which the storekeeper should use in maintaining safe passageways. A patron of a self-service type store, we think, is entitled to rely upon the presumption that the proprietor will see that the passageways provided for his use are reasonably safe, considering the fact that while using these passageways he may be devoting some of his attention toward inspecting the merchandise. See Vogts v. Schwegmann, supra; Reid v. Monticello, supra; Williams v. Liberty Stores, 148 La. 450, 87 So. 233; Chalmers v. Great Atlantic & Pacific Tea Company, 172 Md. 552, 192 A. 419; Sears Roebuck & Co. v. Scroggins, C.C.A. 8 Cir., 140 F.2d 718; Miller v. Safeway Stores, Incorporated, 219 Or. 139, 312 P.2d 577, 346 P.2d 647.
Considering the facts presented here and the rules which have been established by the jurisprudence herein discussed, we think the trial judge correctly held that the boxes stacked at the end of the display island in defendant's store constituted a potential danger to customers, and particularly to those approaching the boxes from the rear of the store, as did Mrs. Provost, that the defendant storekeeper was negligent in failing to provide a safe passageway for its customers, and that its negligence in that respect was a proximate cause of the accident.
The evidence amply supports plaintiffs' allegations that the defendant storekeeper had actual or constructive notice of the fact that the boxes were in that location, since it has been shown that one of defendant's employees actually stacked the boxes there at least 15 or 20 minutes prior to the time the accident occurred.
Defendants contend alternatively, however, that plaintiffs are barred from recovery by Mrs. Provost's contributory negligence in failing to see the boxes in time to avoid stumbling over them.
Our Supreme Court, in Williams v. Liberty Stores, supra, held that a customer, who tripped over a box which the defendant storekeeper had negligently left in a passageway of its store, was barred from recovery by her contributory negligence in failing to see the box. The finding that plaintiff was contributorily negligent, however, was based on the fact that the box was visible to her in the aisle for some distance before she reached it, and that as she approached the box plaintiff was not engaged in inspecting wares or merchandise on either side of the passageway. The Court said:
"It was negligence on the part of the defendant to leave the box in the aisle; and, had the accident happened while plaintiff was engaged in inspecting the wares and merchandise on either side of the aisles, the case would be different. It might have been supposed that she was engaged in inspecting the goods which she expected to purchase, and therefore did not see the obstruction on the floor.

"But plaintiff was not thus engaged at the time of the accident. According to her own statement, she was going in an opposite direction to the one she was supposed to be going; and she was going in a hurry. Her attention was not attracted by the goods on the shelves, and she carelessly traversed the full length of aisle No. 2, some 27 feet, without seeing the box. She should and would have seen the box if she had exercised reasonable care and caution, located, as it was, on the floor at the other end of the aisle, and no person was in the store but herself *603 and the cashier." (emphasis added).
In the instant suit, unlike the facts in the Williams case, the plaintiff was inspecting wares and merchandise located on counters on either side of the aisle, and the boxes over which she tripped could not be seen by her until she reached a point within a few inches of them.
Immediately before the accident occurred, Mrs. Provost was in the 33-inch passageway between the boxes and a counter, so obviously she was very close to the boxes. She was selecting merchandise from the counter and had her back to the stack of boxes. As has already been pointed out, her view of the boxes was obstructed until she reached them so she was unaware of the fact that they were directly behind her as she shopped in this passageway. After selecting the items which she wanted from the counter she turned and started to walk across the aisle to inspect and purchase other items, but immediately upon turning she stumbled and fell over the boxes. She obviously had intended to go around the end of the display island, and she assumed that the passageway around the island would be unobstructed. Since Mrs. Provost was inspecting and shopping for merchandise when the accident occurred, and since it was impossible for her to see the boxes over which she fell until she was within a few inches of them, we agree with the trial judge that under the circumstances presented here she was not negligent in failing to see the boxes before the accident occurred.
As a result of this accident Mrs. Provost sustained a dislocation of the right hip and a severe fracture of a major portion of the acetabulum, the latter being a portion of the socket which supports the hip joint. Efforts on the part of her physician to reduce the dislocation by straight pulling shortly after the fall were unsuccessful. A metal pin was then inserted in the upper part of the leg bone, and by using that pin traction was applied, but this further attempt to reduce the dislocation also was unsuccessful. Both of these procedures were painful to the patient. A general anesthesia was then administered, and the dislocation was reduced by manual manipulation. On the day after the accident, the fracture was reduced by a surgical procedure, under a general anesthetic, which involved an incision about 12 to 18 inches in length over the right buttock and leg, and then a one and one-half inch metal screw was used to fasten the fragments together.
Mrs. Provost was in the hospital for 16 days immediately following the accident, and she was confined to her bed most of each day for a period of about three months after returning to her home. She then used a wheel chair and a walker for about five months, and thereafter she has used a walking cane. She will probably have to use a walking cane for the remainder of her life.
Although Mrs. Provost has made an excellent recovery, she has residual disability resulting from the accident consisting of a 10 per cent flexed contracture in her hip and a 50 per cent restriction of motion of rotation. Although the medical experts were not willing to say that this residual disability was permanent, they agree that Mrs. Provost's hip would never return to the same condition as it was before the accident. She was still suffering some discomfort in the area of her injuries at the time of the trial, which took place 18 months after the accident, she finds it difficult to go up and down stairs, and at the time of the trial she was able to walk only short distances without rest.
The trial judge awarded Mrs. Provost the sum of $15,000.00 for her injuries and for the pain and suffering which she endured as a result of the accident. Defendants contend that the award should be reduced to a sum of not more than $10,000.00, while plaintiffs contend that the award should be increased to $35,000.00.
After considering the nature of the injuries sustained by this plaintiff and the *604 awards made in other cases involving similar injuries, we conclude that the amount awarded to Mrs. Provost by the trial court is fair and adequate. No issue is raised as to the amount of the award made to Mr. Provost.
For the reasons herein set out, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendants-appellants.
Affirmed.