HOOD, Judge.
This is a tort action instituted by Mr. and Mrs. Burtis L. Burns against Child’s Properties, Inc., and its insurer, Selective Insurance Company, based on injuries alleged to have been sustained by Mrs. Burns when she slipped and fell on the floor of a supermarket operated by Child’s Properties, Inc. The case was tried by jury and, pursuant to a verdict rendered by the jury, judgment was rendered in favor of plaintiffs. Defendants have appealed from that judgment.
The evidence establishes that at about 5 :30 p. m. on December 4,1961, Mrs. Burns slipped and fell on the floor of a supermarket operated by defendant Child’s, in Alexandria, and as a result of that fall, she sustained serious injuries to her right knee. She contends that the floor was wet at the place where the accident occurred, and that this moisture on the floor caused her to slip and fall.
The building in which this store was operated was relatively new, having been built in 1957. A wide concrete sidewalk ran along the front of the store, and a canopy at least 12 feet wide and about 14 feet high extended across the entire front of the building over this sidewalk. The main front entrance of the store consisted of four swinging glass doors, with aluminum frames, which doors were located adjacent to each other, being separated only by relatively slender posts or door facings. The two outside doors were operated by an electric mechanism which automatically opened those doors as a customer approached. The two center doors were operated manually, that is, it was necessary for a customer to push on either of the two center doors to open it. One mechanical door and one manually operated one were designated by signs as “In” doors, and the other two were designated as “Out” doors. Each of the two mechanically operated doors was equipped with handrails and with *612 rubber mats, whereas no railings or rubber mats were used or installed in connection with the two manually operated doors. Although the rubber mats installed in connection with the mechanical doors did provide some protection against slipping, the principal purpose of the mats was to insulate the customer against electrical shock, since the weight of the customer stepping on each such mat activated the electrical mechanism which operated the door. The floor of the building is constructed of asphalt tile, which is a standard floor surface for a commercial building of that type.
It was raining at the time the accident occurred, and it had been raining intermittently during that entire day. Mr. and Mrs. Burns had parked their car in the large parking lot located in front of the store, and Mrs. Burns had entered the store through the manually operated “In” door. After making some purchases, she started to leave the store through the manually operated “Out” door, but when she reached a point two or three feet from the door she says that her left foot slipped forward, causing her to fall on her right knee and then to sit on the floor. She testified that although no water was actually standing on the floor, she noticed after her fall that the floor was “damp.”
The evidence shows that although the wide canopy in front of the store had prevented rain from reaching the entrance doors that day, the ground and a part of the concrete walk in front of the building were very wet, and there were a number of puddles of water in the parking lot in iront of the store. As customers with wet shoes entered the store throughout the day, they left some water or dampness on the floor of the building immediately inside the entrance doors. Most of the water or dampness brought into the store by customers remained within an area of three or four feet of the two “In” doors. It was conceded by the manager of the store, however, that some dampness could have been left inside the manually operated “Out” door, although he states that during his five years of service in that store he had never observed any dampness on the floor there.
The evidence shows that on the day the accident occurred, and for some time prior thereto, two porters were employed by the store to keep the entranceway mopped dry during inclement weather. No regular times were set for the floors to be mopped, but it was left up to the porters and to at least three employees, including the manager, who were stationed in the front part of store, to see that the floors were mopped as often as necessary to keep them reasonably dry and safe. The evidence also shows that the floors of the store are cleaned daily with a large mechanically operated scrubbing machine, and the floors near the front entranceway are swept regularly several times a day at less than two-hour intervals. Also, at intervals of from 17 to 20 days, the old wax is removed, the floors are then cleaned thoroughly and they are rewaxed with a non-skid type wax. Special equipment has been installed in the store which blows warm air out of the ceiling onto the front doors and down to the floor immediately inside these doors, and this assists in preventing the accumulation of moisture on the floor at that location. Mrs. Burns, who had just entered the store and was endeavoring to leave it through the front entrance doors, testified that she had not detected that the floor was wet before she fell. There is nothing to show that the manager of the store, or any of its employees, had any knowledge of the fact that the floor was wet at the place where the accident occurred.
The general rule applicable to “slip down” cases of this nature is that a person who enters a store for the purpose of trade occupies the status of an invitee or business visitor, and that the owner or proprietor of such a place must exercise ordinary care and prudence to keep the aisles, passageways, floors and walks in a reasonably safe condition for his customers who are on the premises by his implied invitation. Although the law imposes a duty of reasonable care toward the invitee, it does not make *613 the storekeeper the absolute insurer of the safety of the persons properly on the premises, and his liability does not arise unless and until it is established that the injury or loss was caused by his negligence. Peters v. Great Atlantic & Pacific Tea Co., La.App. 2 Cir., 72 So.2d 562; Cannon v. Great Atlantic & Pacific Tea Company, La.App. 3 Cir., 146 So.2d 804 (cert. denied); and Provost v. Great Atlantic & Pacific Tea Company, La.App. 3 Cir., 154 So.2d 597.
In St. Julien v. Fireman’s Fund Insurance Company, La.App. 3 Cir., 127 So.2d 245, plaintiff slipped and fell in an alcove at the entrance of a commercial building. This alcove was about four feet deep, with a terrazzo tile floor which had a slope of about six inches from the rear of the alcove down to the sidewalk. It had been raining and the floor of the alcove was wet. Plaintiffs contended that the accident resulted from the negligence of the owner of the building “in that the entrance was slippery and on an incline, that it had no handrails, canopy, rubber mats, grating or other protective devices for safety purposes, and that the owner knew of the situation and failed to remedy it.” We affirmed the holding of the trial court that the owner of the insured building was not negligent, and in so holding, we said:
“ * * * the circumstance that the entranceway to commercial buildings may be more slippery in wet weather than in dry is not of itself sufficient to constitute actionable negligence on the part of the property owner, when such a condition is observable by a reasonably prudent person of ordinary intelligence and when then the entrance-way can be traversed in safety by the exercise of ordinary care. Under this jurisprudence and as shown by the evidence accepted by the trial court, the commericial entranceway involved in the present litigation, although more slippery when wet than ordinarily, was not a negligently maintained hazard to pedestrians exercising ordinary care.”
In Lawson v. D. H. Holmes Co., La.App. Orl., 200 So. 163, the decedent slipped and fell on a step leading from the sidewalk into a vestibule in defendant’s store, the step apparently constituting a part of the vestibule. The step was covered with an iron slab which had become worn by many years of use. It had been raining, and the evidence showed that at the time of the accident the entrance vestibule to the store, including this step, was wet and damp. The evidence also showed that this vestibule had been in use for many years, “that thousands of people walk over it daily; that there has never been a complaint with respect to its condition and that no accident has ever before occurred.” Plaintiffs contended that the defendant storekeeper was negligent in failing to maintain a reasonably safe entrance and exit from its store. The court, in holding that the defendant storekeeper was not negligent, said:
“ * * * The well established jurisprudence of this State, with respect to the duty owed by a storekeeper to his patrons, is that he is not an insurer of their safety. He need not keep his floors and passageways in perfect condition but must exercise only ordinary care and prudence to keep them in reasonably safe condition for his customers. * * * ”
Also in that case the Orleans Court of Appeal quoted, with approval, the following excerpt from the opinion rendered by the Supreme Court of Ohio in S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132:
“ ‘Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. Everybody knows that the hallways between the outside doors of such buildings and the elevators or business counters inside the building during a continued rainstorm are tracked all over *614 by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. The same thing is true in the hallways of all post offices. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas,, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.’ ”
In Battles v. Wellan, La.App. 2 Cir., 195 So. 663 (cert. denied), plaintiff slipped and fell on the tile flooring in a foyer or an arcade at the entrance of defendant’s department store. It had been raining that day and the tile flooring in this foyer or arcade was wet. The court held that under the circumstances presented in that case plaintiff was not entitled to recover.
Plaintiffs contend that the three cases just discussed, the St. Julien, Lawson and Battles cases, are not applicable because in each of those cases the fall occurred outside the building proper, while in the instant case the accident occurred inside the building. It is true that in each of those cases the accident occurred on a step or in an alcove, vestibule, foyer or arcade of the building, and that in each instance the floor or step was exposed to the weather. We also note that in the Battles case the Second Circuit Court of Appeal quoted, with approval, the following excerpt from the opinion of the trial judge:
“ 1 * * * Had she been inside the store and while walking down an aisle encountered a wet and slippery floor, we do not think it should be presumed that she should have thought it necessary to pay any attention to the floor. But on the outside of the store proper which by its very nature might become wet from rain, especially if accompanied by much wind from the side next to Washington street, where she entered, together with the further fact that the flooring of the arcade being of smoother surface than the ordinary concrete sidewalk — she knowing this from experience, mature judgment and observation of such places — we think that unless she paid some attention to where she was walking, she would be negligent herself such as to bar recovery. * * * ’ ” (Emphasis added.)
We agree that a person who walks on a surface which is exposed to the weather during a rainfall is charged with knowledge that the surface may be wet, and he is under a duty to exercise the degree of care which is commensurate with that circumstance. Also, we feel that a customer in an aisle or passageway on the inside of a supermarket ordinarily has the right to assume that the passageway is being maintained in a reasonably safe condition, and in the absence of circumstances which indicate otherwise he may act on that assumption. In the instant case, the accident occurred immediately inside, and within two or three feet of, the principal front entrance of the building. It had been raining all day, and because of the rain, the wet parking lot and the damp sidewalk many customers with wet shoes were entering and leaving the store through the front entrance, and in doing so they were tracking water or moisture into the store. Mrs. Burns, herself, had just entered the store through the same passageway with wet shoes just a few minutes before the accident occurred. Under those circumstances, we think Mrs. Burns, from experience, mature judgment and observation of such places, should have anticipated that some moisture would be tracked into the store by customers, and she should have expected the floor to be damp within a few feet of the principal front door of the building. In our opinion, therefore, the principles applied in the St. Julien, Lawson and Battles cases are applicable here, even though the accident in this case did occur inside the building.
In Schultz v. United States, Eastern District New York, 203 F.Supp. 941, the plain *615 tiff slipped and fell in the vestibule of a post office building located in the City of New York. He alleged that the accident was caused by the presence of snow and slush which had been tracked into the building by patrons. The evidence showed that the building’s custodian had mopped the steps periodically in order to keep them safe for pedestrian traffic. The court determined that the government could not be held liable for the accident, since it had taken reasonable precautions to maintain the steps in a safe condition. In so holding, the court said:
“ * * * In the case of Miller v. Gimbel Bros. Inc., 262 N.Y. 107, at page 108, 186 N.E. 410, at page 410 the New York Court of Appeals set the following standard, ‘The owner of a store must take reasonable care that his customers shall not be exposed to danger of injury through conditions in the store or at the entrance which he invites the public to use. He cannot prevent some water and m%id being brought into an entranceway on a rainy day and he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions.’ ”
The facts in Brunet v. S. S. Kresge Co., 115 F.2d 713 (7 Cir., 1940), are similar to those presented here, and the court held that there was no negligence on the part of the storekeeper. The court, (quoting from Sears, Roebuck & Co. v. Johnson, 10 Cir., 91 F.2d 332) said:
“ ‘If what was shown in this case was sufficient to permit recovery, it would require store owners to have a mopper stationed at the doors on rainy days for the sole purpose of mopping up after every customer entering or leaving the premises. Every store owner would be required to be an insurer against such accidents to public invitees who came in on rainy days with wet shoes.’ ”
The Michigan case of Mandjiak v. Meijer’s Super Markets, Inc., 364 Mich. 456, 110 N.W.2d 802, involved a fall on the stairs in the interior of defendant’s store on a day when the snow was thawing and it was very wet outside. Customers had tracked water and moisture into the store and on these steps. The plaintiff claimed that defendant was negligent in allowing the moisture to remain on the stairs and that its negligence in that respect was the cause of the accident. In affirming a jury verdict in favor of defendant, the court stated:
“ * * * Several witnesses testified that the stairs were, in fact, wet, and, as a consequence, that they were slippery, and we have no doubt that, to some degree, they were. On such a day it would be remarkable indeed if they did not carry some residue of moisture. But, on the other hand, there was testimony that others navigated the stairs in safety, and, in fact, that immediately preceding plaintiff’s descent another customer had carried a little boy down the stairs without mishap. Upon these facts a jury question was presented, with respect to which we are in agreement with the trial court in his ruling upon plaintiff’s motion for new trial: * *
Other cases which we have considered and which we think support the views hereinabove expressed are: Levine v. Hartford Accident & Indemnity Company, La.App. 3 Cir., 149 So.2d 433; Bryant v. Ludendi Roller Drome, Inc., La.App. 2 Cir., 150 So.2d 55; Richards v. Schwegmann Brothers Giant Super Markets, Inc., La.App. 4 Cir., 151 So.2d 142; Mitchell v. National Surety Corporation, La.App. 2 Cir., 149 So.2d 213; Hickingbottom v. T. G. & Y. Stores of Louisiana, Inc., La.App. 2 Cir., 147 So.2d 102 (cert. denied); Levert v. Travelers Indemnity Company, La.App. 3 Cir., 140 So.2d 811; Bowers v. Lumber- *616 mens Mutual Casualty Company, La.App. 2 Cir., 131 So.2d 70; Burdeaux v. Montgomery Ward & Co., La.App. 2 Cir., 192 So. 728; and Grigsby v. Morgan & Lindsey, La.App. 2 Cir., 148 So. 506.
In the instant suit the evidence convinces us that the manager and employees of the store took reasonable precautions to guard against injury to customers using the entranceway provided for them. These precautions included the use of porters to mop up the water which had been tracked in by patrons, the use of “non-skid” wax on the floor, the installation of a wide canopy over the sidewalk in front of the store to diminish the amount of moisture that could be tracked in by patrons or blown in by high winds, the installation of two sets of handrails at the automatically operated doors, the installation of rubber mats on the thresholds of the automatically operated doors, and the use of a heating system which blows hot air on the floor immediately inside of the entrance doors. Also, in view of the weather conditions at the time this accident occurred, we think a reasonably prudent person of ordinary intelligence would be aware of the fact that some water was being constantly tracked into the store by customers and that normally the floor immediately inside the front entrance doors would be damp. Under those circumstances, we think a customer entering or leaving the store is obliged to exercise the degree of care which would be expected of a reasonable and prudent person.
There has been no showing in this case that the manager or any of the employees of the defendant storekeeper had any notice of the fact that the floor was wet at the place where Mrs. Burns fell. There, in fact, is some evidence to the effect that actually there was no dampness or moisture at all on the floor at that point. The evidence also shows that from the time the store was first opened until the date the accident occurred, a period of four or five years, an average of at least 5,500 people entered and left the store each week through that entranceway, and that no one prior to that time had ever slipped or fell at the entrance.
In Levine v. Hartford Accident & Indemnity Company, supra, which involved a fall in the hallway of a hospital, we said:
“ * * * if the alleged slip and fall is alleged to have been caused by an extraneous object or substance on the floor, it must be shown that the owner had either actual or implied knowledge of the extraneous substance for such a time that the owner had an opportunity to remove it. In other words, it must be shown that the owner or his employees placed the extraneous substance there or, if placed by someone else, that the owner or his employees had actual knowledge of the presence of the substance or that it had remained in such a position of danger for such a length of timé that the owner or his employees should have had knowledge of the substance and removed it. The claimant bears the burden of proving these facts. * * * ”
After considering all of the facts presented in this case and the jurisprudence hereinabove discussed, we conclude that plaintiff has failed to discharge the bui-den of proving negligence on the part of the defendant storekeeper, Child’s Properties, Inc.
We are aware of the cases pointed out to us by counsel for plaintiffs in which appellate courts have expressed a reluctancy to set aside the verdict of a jury on questions of fact. In this case, however, although there are serious disputes as to some of the essential facts, we have resolved all of those factual disputes in favor of plaintiffs. Even under this interpretation of the facts, however, we are compelled to conclude that the jury erred in rendering a verdict in favor of the plaintiffs.
For the reasons herein set out, therefore, the verdict of the jury and the judgment, appealed from are reversed, and judgment *617 is hereby rendered in favor of defendants and against plaintiffs, rejecting plaintiffs’ demands and dismissing this suit at plaintiffs’ costs. All costs of this appeal are assessed to plaintiffs-appellees.
Reversed.
On Application for Rehearing.
En Banc. Rehearing denied.