GUIDRY, Judge.
Plaintiff seeks to recover damages for personal injuries sustained when she fell while shopping in a grocery store owned and operated by the defendant, Hazelwood & Santillo, Inc. The American Insurance Company, as the liability insurer of Hazel-wood & Santillo, Inc., is also made a party defendant. The trial court found for the defendant and dismissed her suit at her costs. Plaintiff perfected this appeal.
Plaintiff contends that the trial judge committed error in that although he found that the defendant store owner created and maintained a dangerous condition on its premises he failed to find that this dangerous condition was the cause of plaintiff’s fall and resulting injuries.
The facts of this case are substantially without dispute. On the date of the accident, i. e., August 8, 1974, plaintiff and her common-law husband were shopping in defendant’s grocery store. After making a purchase at the meat counter which was located in the rear of the building she began walking to the front of the store for the purpose of paying for the meat and groceries which she had bought. As plaintiff proceeded to the front of the store down a center aisle she was preceded by her husband, Eddie Thierry. When plaintiff reached a point about four or five feet from the meat counter she slipped or tripped and fell. Plaintiff attempted to break her fall by grabbing her husband who was to her front, however her effort was unsuccessful. Following plaintiff’s fall Eddie Thier-ry summoned another shopper, Alphonse Pitre, and the store manager, Lionel Dupre, to assist him in getting plaintiff to her feet. The only factual dispute concerns what, if anything, caused the plaintiff to fall and whether or not she fell on her back or to her knees. Plaintiff contends that she slipped or tripped when her feet came in contact with a loose piece of plywood which had been laid in the aisle by the owner or manager to cover a weak place in the floor causing her to fall backwards onto her back. Defendant denies that plaintiff’s fall was precipitated by the loose board and asserts that she simply fell to her knees while walking through no fault or negligence on the part of defendant.
It is not disputed that in the aisle where plaintiff was walking and in close proximity (one or two feet) to where plaintiff lay on the floor after her fall there was laying a piece of plywood approximately l/j" thick and 18" square. This piece of plywood, which was not nailed or otherwise fastened to the floor, had been placed there to cover a weak spot in the floor. There is no positive evidence as to who put the loose plywood over the defect in the floor, however, it is clearly established by the record that it had been maintained in the same place for some time and that the store manager was aware of such condition.
The trial court determined that the presence of this loose board laying in the aisle regularly used by the store’s customers was a dangerous condition and that such condition was well known to the storekeeper and/or his manager. In this regard the trial judge had this to say:
“Under the laws of our state, the owner of a store is not an absolute insurer of the safety of the people who patronize his establishment. He is, however, responsible for his lack of diligence in protecting the patrons, and if the evidence should reveal that Mrs. Landry actually tripped over the board or that the board slipped out from under her and that as a result thereof she was injured, then she is certainly entitled to recover. ...”
We believe this finding by the trial court to be eminently correct. In the case of Hay *685 v. Sears, Roebuck & Company, 224 So.2d 496, 498 (3rd Cir. 1969) this Court defined the standard of care owed by a business establishment to its customers to be as follows:
“The law applicable to the facts and circumstances presented here is well established. A proprietor owes a duty to his customers to use ordinary care to keep his aisles, passageways and floors in a reasonably safe condition. Although the law imposes a duty of reasonable care ■ by the proprietor toward his customers, the storekeeper is not the insurer of their safety while on his premises. In order to impose liability on a storekeeper or proprietor the plaintiff must prove by a clear preponderance of evidence that a dangerous condition, which caused injury to the plaintiff, was:
(1) created or maintained by the storekeeper or one of his employees; or
(2) if not created by the storekeeper or one of his employees, that (a) the storekeeper or one of his employees had actual knowledge of the dangerous condition, or (b) the dangerous condition had remained long enough for the storekeeper to have constructive knowledge of the condition.
Lofton v. Travelers Insurance Company, 208 So.2d 739 (La.App.3rd Cir. 1968); Jones v. W. T. Grant Company, 187 So.2d 470 (La.App.3rd Cir. 1966); Peters v. Great Atlantic & Pacific Tea Company, 72 So.2d 562 (La.App.2nd Cir. 1954).”
The placing and maintaining of a loose board inch thick and 18 inches square in a small corridor lined by shelves of groceries on each side, which aisle is regularly used by the store’s customers, clearly creates a dangerous situation for which the storekeeper is liable if such condition causes injury. It requires little imagination to conclude that as a result of such a condition a customer who is busily engaged in shopping may trip or slip and fall under such circumstances.
In denying recovery to plaintiff the trial court determined that plaintiff failed to establish by a preponderance of the evidence that the loose board was the cause of her fall. Our own review of the record in this case leads us to conclude that the trial court’s determination in this regard was manifestly erroneous. We make this finding with full awareness of the well established rule that the conclusions of the trial court on issues of fact must be treated with considerable appellate respect and should not be disturbed unless manifestly erroneous. Canter v. Koehring, La., 283 So.2d 716 (S.Ct.1973).
It is clear from the record that no one saw the plaintiff fall. As plaintiff fell Eddie Thierry was walking in front of her and only turned around when plaintiff grabbed for him in an attempt to break her fall. In this connection Thierry testified as follows (Tr. pg. 153):
“Q. Okay, now, if you were in front of her, could you see when she fell ?
A. Well, I never seen when she fell, but she struck me what made me knew she fell.
Q. Okay, now, when she struck you, what position was she in?
A. When she struck me, and I looked back, she was flat on her back. That’s the position she was in.”
Alphonse Pitre a customer in the store at the time likewise did not see plaintiff as she fell. Pitre testified on this point as follows (Tr. pg. 169):
“Q. Now, were you looking at her when she fell ?
A. No, sir.
Q. You were not looking at her P
A. No sir. But she fell, when I seen she was on her two knees.”
Lionel Dupre, the store manager, admitted that he was busy at the cash register *686 at the time and did not see plaintiff fall (Tr. pg. 181).
Plaintiff testified with positivity that she fell when she came into contact with the loose piece of plywood. In this connection she stated, (Tr. pg. 115):
“Q. And before you get to the check out counter did anything happen?
A. Yeah, on my way going up front, I was walking and he was, and he was a little ahead of me. And as I was walking I tripped and fell.
Q. What’d you trip on?
A. They had a board on the floor.
Q. All right, would you explain in more detail how you tripped and what caused you to trip ?
A. Well, I was walking, and I walked over the board, I guess, and I just fell. And I tried to grab at him, but when I reached my hand to grab at him, well, it knocked all the groceries out of his hand.
Q. What caused you to fall, Mrs. Landry?
A. The board did.
Q. Plow did it cause you to fall?
A. Well, it wasn’t tacked to the floor.
Q. All right, well, what did it do then? What happened to the board that caused you to fall?
A. It must have slipped because it wasn’t tacked.”
Plaintiff’s testimony is corroborated by the following facts and circumstances in the record:
(a) After her fall plaintiff lay on the floor within one or two feet of the floor defect and the loose piece of plywood.
(b) There was no other obstruction or defect in the aisle where plaintiff walked which could have caused her to fall.
(c)The loose board was moved from its usual place as a result of the fall for Alphonse Pitre testified (Tr. pg 172) that when he arrived on the scene to assist Thierry that he “took he took the board and shove (sic) it back where it was.”
The trial court concluded that plaintiff did not fall as a result of the loose board because of the testimony of Alphonse Pitre who at one point testified that plaintiff was past the board when she fell and presumably because of the testimony of the store manager who testified that when he arrived on the scene plaintiff lay on the floor about three feet in front of the board. As aforesaid we believe that this was error. Pitre admittedly did not see plaintiff fall nor did the store manager. Dupre, the store manager, although testifying that plaintiff lay on the floor three feet in front of the board (Tr. pgs. 182, 186 and 187) at a later point testified that he did not see or notice the plywood board when he arrived on the scene (Tr. pg. 187). It is difficult to understand how Mr. Dupre could testify as to the relative location of plaintiff and the piece of plywood board if he did not see or notice the plywood when he arrived on the scene. For the above reasons we find that the plaintiff has shown by a preponderance of the evidence that her fall and the resulting injuries were caused by the negligence of the defendant storekeeper.
Defendants in their answer assert that plaintiff was guilty of contributory negligence essentially because she was allegedly not keeping a proper lookout as she walked through the store. The trial court did not reach this issue. Our review of the record leads us to the conclusion that plaintiff was not guilty of any negligence under the circumstances. It was not shown that plaintiff was aware of the presence of this board in the shopping aisle nor was it shown that this loose board was *687 readily discernible by even the most cautious who would be busy shopping. Suffice it to say that we find no merit in this contention. See Provost v. Great Atlantic & Pacific Tea Company, La.App., 154 So.2d 597; Gilliam v. Lumbermen’s Muhial Casualty Company, 240 La. 697, 124 So.2d 913; Vogts v. Schwegmann, La.App., 56 So.2d 177.
QUANTUM
Having determined that the trial court judgment must be reversed it is necessary that we determine a just award to compensate plaintiff for her damages.
Plaintiff saw her family doctor, Dr. Perry L. Fisher, the day following the accident. Dr. Fisher diagnosed plaintiff’s injury as a Lumbosacral Sprain. Plaintiff was hospitalized by Dr. Fisher for approximately nine days during which period she received diathermy treatments and medication for pain. Dr. Fisher saw plaintiff following her discharge as an out-patient and finally discharged her on October 7, 1974, some two months post accident. Dr. Fisher did not testify at trial however his written report was admitted by stipulation of counsel. According to Dr. Fisher’s report plaintiff’s response to therapy was dramatic and upon discharge the prognosis was good. Although plaintiff testified that she continued to have pain and considerable residual disability following her discharge by Dr. Fisher and up to the time of trial this is refuted by the medical evidence in the record. Dr. August C. Terrence, testified that he treated plaintiff on January 23, 1975 and September 3, 1975, however, her complaints were not related to the injury which she sustained in August 1974 but were caused by neuritis resulting from her diabetic condition. Plaintiff was also seen by Dr. Charles A. Borne, a specialist in neurosurgey, Dr. William G. Akins Jr., an orthopedic specialist, and by Dr. Robert L. Bordelon, an orthopedic specialist, all for;, the purpose of examination and evaluation. None of these doctors were able to make any objective findings in support of plaintiff’s continued complaint of back pain and all three found no anatomical correlation for her complaint of numbness all over her body. Both Dr. Akins, who testified for plaintiff, and Dr. Bordelon, who testified for defendants, concluded that plaintiff seemed to exaggerate her complaints. In summary we conclude, on the basis of the record, that as a result of her fall on August 8, 1974 plaintiff suffered a lumbosacral sprain which was completely resolved some two months later on her discharge by Dr. Fisher. Under the circumstances of this case we believe that an award of general damages in the amount of $2000.00 would do substantial justice between the parties. Of course plaintiff is entitled to recover as special damages the medical expenses incurred as a result of her injury, i. e., the sum of $910.00 plus all costs incurred both on the trial and appellate level. Included in the latter item are the fees of the medical experts who testified on behalf of plaintiff, Drs. Borne and Akins, which are fixed at the sum of $100.-00 each, the fee of Dr. Terrence having been fixed by the trial court.
For the above and foregoing reasons the judgment of the District Court is reversed and judgment is rendered in -favor of plaintiff, Annie Edward Landry, and against defendants, Hazelwood & Santillo Inc. and The American Insurance Company, in solido, condemning the latter to pay unto plaintiff the sum of TWENTY NINE HUNDRED TEN AND NO/100 ($2910.00) DOLLARS with legal interest from date of judicial demand until paid. Defendants are cast for all costs both on the trial and appellate level including the fees of the medical experts, Drs. Terrence, Borne and Akins, as fixed by this court and/or by the trial court.
REVERSED ÁND RENDERED.