DOMENGEAUX, Judge.
On October 15, 1974, plaintiff, Mrs. Reed, a customer in defendant’s department store, tripped, fell and injured herself. Joined by her husband, they sued to recover damages for her injuries and medical expenses.[1] Finding causal negligence on the part of the defendant and lack of same on the part of Mrs. Reed, the district judge awarded her general damages of $15,000.00 and medical specials to Mr. Reed in the amount of $905.75.
Defendant has appealed, suggesting that the trial judge erred in finding negligence on the part of defendant and lack thereof on the part of Mrs. Reed. Alternatively it contends that the award to Mrs. Reed is excessive. Plaintiffs answered the appeal seeking a higher award for general damages. We affirm.
The defendant owns and operates a large department store in the City of Eunice, Louisiana. There are numerous departmentalized areas within the store. One such area is the shoe department. There are main aisles throughout the establishment and in addition there exists subsidiary aisles, which are also used by the patrons. One such subsidiary aisle, running west to east, leads from the hardware department into the shoe department and continues into *326 the fabric department. Within the shoe department is a fitting area. The aforementioned subsidiary aisle, approximately 30 inches wide, leads into the fitting area. Actually the aisle is formed by movable verticle shoe racks along its length. The shoe department, the fitting area therein, and the subsidiary aisles present a rather condensed, cluttered area with multitudinous displays of unboxed shoes, slippers, etc. on racks and tables. The west-east subsidiary aisle converges generally near the southern side of the aforementioned fitting area.
The fitting area contains two sets of three tubularly framed chrome cushioned chairs for convenience in shoe fitting. The three chairs of each set are bolted, together. One set is situated at the northern side of the fitting area and the other set is on the southern side. There are also two tubularly framed chrome cushioned fitting stools, which by custom, when not in use, are placed under each set of chairs to the extent that their configuration allows. Even when the stools are so situated, because of their height, they protrude about sixteen inches beyond the front of the chairs. When the stool is placed under the chairs on the south set of chairs it blocks substantially the continuation of the aforementioned west-east subsidiary aisle. The chairs and the stools are made of the same type and color chrome and cushion.
On the date mentioned plaintiff, Mrs. Mercedes Reed, and her mother, were patrons in defendant’s store. They shopped and browsed around from one department to another, ultimately becoming separated. Mrs. Reed had purchased one or two brooms (that point is not clear), was carrying it or them in her left hand and a large purse-bag in her right hand. She proceeded to walk down the west-east subsidiary aisle in an easterly direction, planning to ultimately meet her mother in the fabric department, which was east of the shoe fitting area, and while so proceeding tripped on the protruding footstool, her purse becoming entangled with a verticle shoe rack. Mrs. Reed fell to the floor, face down, and received rather serious and painful injuries. She did not see the footstool.
The trial judge, addressing himself to the jurisprudence which centers on the responsibility of store keepers to keep aisles open and free from obstruction, found little difficulty in holding that under the circumstances the defendant was guilty of negligence which was the proximate cause of Mrs. Reed’s trip, fall, and subsequent injuries.
Most of the shoes and other foot apparel in the store are displayed on racks and tables in the shoe department. It is clear, and defendant’s store manager so admitted, that the merchandise is displayed so that customers are attracted to them, may handle and feel them, and ultimately purchase some of the items. This operational fact leads to the obvious conclusion that a customer would pay more attention to the displayed merchandise than to the floor to discover possible obstructions in the aisle. This is particularly true when an area is condensed and crowded with displayed merchandise as was the case here.
The regular placing and maintaining of the footstool which partially blocked the bisecting west-east aisle clearly created a dangerous situation.
Under the circumstances herein it was or should have been reasonably foreseeable to defendant that the position of the footstool was such that a shopping patron could easily trip thereon, as happened to Mrs. Reed. We therefore agree with the conclusion of the trial judge in finding defendant negligent. Ferrington v. McDaniel et al, Sup.Ct., rendered June 21, 1976, 336 So.2d 796; Whittaker v. Schwegmann Brothers Giant Supermarkets, 334 So.2d 756 (La.App. 4th Cir. 1976); Landry v. Hazelwood and Santillo, Inc., et al., 330 So.2d 683 (La.App. 3rd Cir. 1976); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La. 1976); Hay v. Sears, Roebuck & Company, 224 So.2d 496 (La.App. 3rd Cir. 1969); Provost v. Great Atlantic & Pacific Tea Company, 154 So.2d 597 (La.App. 3rd Cir. 1963).
Defendant contends that Mrs. Reed should have seen the footstool, and therefore is responsible for her own injuries. *327 Although plaintiff may not have intended to buy any footwear, she certainly had been shopping in the store and was going through the shoe area. She had shopped in defendant’s store many times before and stated that she would often go to the store to buy one item and would end up buying several. It stands to reason that wares which are prominently displayed in a store such as West Brothers will be looked at by the patrons, even though no purchase is ultimately made or intended.
In view of the format and layout of the store and particularly in the area of the shoe department and the subsidiary aisle leading into the fitting section, coupled with the fact that Mrs. Reed’s hands “were full” we conclude that she was not negligent in failing to see the footstool.
The trial judge, in his reasons for judgment, quoted from the case of Provost v. Great Atlantic & Pacific Tea Company, supra, as follows:
“Defendant’s store in this case was a ‘self-service’ type store, in which its merchandise was displayed on counters or on shelves so that customers could inspect the merchandise as they walked in the aisles or passageways of the store. The storekeeper certainly intended that his customers would devote the major part of their attention to the merchandise which was being displayed, rather than to the floor to discover possible obstructions in the aisle, and in our opinion that circumstance must be considered in determining the degree of care which the storekeeper should use in maintaining safe passageways. A patron of a self-service type store, we think, is entitled to rely upon the presumption that the proprietor will see that the passageways provided for his use are reasonably safe, considering the fact that while using these passageways he may be devoting some of his attention toward inspecting the merchandise. See Vogts v. Schwegmann [La.App.Orl., 56 So.2d 177] supra; Reid v. Monticello, [La.App., 1 Cir., 33 So.2d 760] supra; Williams v. Liberty Stores, 148 La. 450, 87 So. 233; Chalmers v. Great Atlantic & Pacific Tea Company, 172 Md. 552, 192 A. 419; Sears Roebuck & Co. v. Scroggins, C.C.A. 8 Cir., 140 F.2d 718; Miller v. Safeway Stores, Incorporated, 219 Or. 139, 312 P.2d 577, 346 P.2d 647.”
The above statement fits the facts of this case. The trial judge observed that the testimony of Mrs. Young, the Manager of the Shoe Department, described Mrs. Reed as “looking ahead” and not “down”. In that regard he stated:
“In fact, she was attempting to say that Mrs. Reed should have looked down, in defense of the defendant’s position. However, this testimony accentuates the fact that Mrs. Reed was looking around, as the store hoped she would, at their displayed merchandise.”
In Ferrington, supra, the lady plaintiff walked some twenty feet from one counter to another in a supermarket aisle and tripped and fell on a box which protruded some 16 to 20 inches into the aisle. It is evident that if she were looking at the box she would have seen it for some distance. Our Supreme Court, in allowing recovery, reversed the district and appellate courts. Addressing itself to self-service stores where objects for sale are displayed, the Court quoted from Kavlich v. Kramer, 315 So.2d 282 (La.1975):
“. . . Numerous items displayed upon shelving along the aisles or walkways in self-service stores entice the customers to focus their eyes upon the display rather than on the surface upon which they walk. . . .”
Having concluded that plaintiffs are entitled to recover, we now consider the award made to Mrs. Reed for general damages. The award of special damages is not in dispute.
As a result of her fall she received a dislocated right shoulder, a chip fracture of the glenoid fossa (the cup into which the humerus fits) and a possible avulsion of a small portion of the bone of the upper arm. She was hospitalized and x-rayed. A reduction of the subulation dislocation was performed. She remained in the hospital for *328 five days, during which time she was placed in a cast type strap which immobilized the shoulder and arm for about three weeks. She was treated with pain killers and received physical therapy. Mrs. Reed was under the doctor’s care until March, 1975, and wound up with some limitation of motion in the shoulder area for several months, nearly a year. She suffered extreme pain initially which gradually subsided, but at the time of trial (April, 1976) she still complained of pain in the shoulder area.
Mrs. Reed’s attending physician attested to the painful character of her injuries. He acknowledged that a shoulder dislocation with its attendant tearing and stretching of tissues causes severe pain. Plaintiff was totally disabled for approximately two months with gradual improvement thereafter consisting of greater mobility of the shoulder and arm and lessening pain. The physician stated that in joint injuries such as Mrs. Reed experienced, it is quite common for traumatic arthritis to set in, but that condition takes time to develop.
Mrs. Reed testified as to the severity of her pain initially and subsequently, and of her inability to utilize her right arm to any great extent for almost a year. At time of trial she still had some limitation of motion and constant pain (although not agonizing) which she attempts to relieve by massage and analgesics.
The district judge, in his reasons for judgment stated that he considered and gave credence to the medical testimony and also to Mrs. Reed’s testimony concerning her pain and disability. He awarded her $15,000.00. We find no abuse of discretion. He has much under the provisions of C. C. Article 1934(3) and the jurisprudence. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (La. 1963); Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (La. 1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (La. 1967); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (La. 1971); Walker v. Champion, 288 So.2d 44 (La. 1973); Bitoun v. Landry, 302 So.2d 278 (La. 1974).
Although the injuries sustained by the lady plaintiff in Calecas v. Great Atlantic and Pacific Tea Company, Inc,, 330 So.2d 619 (La. App. 4th Cir. 1976) are not identical to those sustained by Mrs. Reed, we find many similarities, particularly in the realm of pain and the duration thereof. In Cale-cas the Fourth Circuit affirmed an award of $14,000.00 general damages and $1,049.13 in specials.
For the above and foregoing reasons the judgment of the district court is affirmed at defendant-appellant’s costs.

AFFIRMED.

. By stipulation in a pre-trial order the proper party defendant is West Brothers of Eunice, Louisiana, Inc.